James Heath **TARVER** and Shannon Tarver, Appellants,

v.

**SEBRING CAPITAL CREDIT CORPORATION** and Gregory S. Graham, Appellees.

No. 10–00–394–CV.

Court of Appeals of Texas, Waco.

Jan. 30, 2002.

---

1. Before September 1, 1994, the offense of deadly conduct was named "reckless conduct."

Bryan F. Russ, Jr., Molly Ann Hedrick, Palmos, Russ, McCollough & Russ, L.L.P., Hearne, for appellants.

Brian T. Morris, Kent A. Caperton, Winstead, Sechrest & Minick, P.C., Dallas, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

James and Shannon Tarver own a residence in Robertson County, which is their homestead. In 1998, its estimated value was $141,000. In May, the Tarvers obtained a "home equity loan" for $112,800 (80% of the home's value)[1] from Sebring Capital Credit Corporation (Sebring), bearing interest at the rate of 9.375% per annum. Mortgage Plus, a company independent of Sebring, brokered the deal. The Tarvers gave Sebring a lien on their residence to secure the loan, which is authorized by article sixteen, section 50(a)(6) of the Texas Constitution. TEX. CONST. art. XVI, § 50(a)(6).[2] Among other constraints, section 50(a)(6) limits "fees ... necessary to originate, evaluate, maintain, record, insure, or service the extension of credit" to three percent of the amount of the loan. *Id.* § 50(a)(6)(E). By the express wording of the subsection, the fee limit does not include interest charged on the loan. *Id.*

Sebring maintains that it initially offered an interest rate of 12.375%. It claims that when the Tarvers requested a lower rate, Sebring offered 9.375% conditioned on the Tarvers paying 3% of the loan, or $3,384, as discount points ("points"). Points are commonly charged as an added compensation to the lender in exchange for a lower interest rate. Sebring also says it authorized Mortgage Plus to charge as compensation for its work an "origination fee" of up to 3% of the loan.

---

1. The maximum amount of a "home equity loan" is 80% of the fair market value of the home, less the amount of any other liens which may exist on the home. TEX. CONST. art. XVI, § 50(a)(6)(B).

2. The subsection went into effect January 1, 1998.

At closing, the Tarvers complained they were being overcharged for fees. After negotiations, they were charged $3,384 in points plus another $1,692 for Mortgage Plus's origination fee. These amounts totaled $5,076, which is four and one-half percent of the amount of the loan. All other fees at closing, totaling $3,103.33, were treated by Sebring as a credit, *i.e.*, the fees were absorbed by Sebring.[3]

The record shows that within a few months the Tarvers defaulted on the monthly payments on the loan. By early 1999, they were $6,661.36 in arrears. In the Fall of 1999, they filed a declaratory judgment action claiming Sebring had violated the three-percent rule in section 50(a)(6)(E). *Id.* The Tarvers claimed, without citing authority, that a violation of the three-percent rule entitles them to have the lien declared invalid and the principal of the loan and interest thereon forfeited. Sebring filed a motion for summary judgment, claiming that the points were "interest," not a "fee." The motion was granted. When this claim was severed from fraud claims the Tarvers had filed against Sebring and another defendant, Gregory S. Graham,[4] the judgment became final. The Tarvers' issue of whether points are "interest" or "fees" in home equity lending is an issue of first impression in Texas.

The Tarvers make two alternative arguments. First, they say points are actually "fees" subject to the three-percent rule. Second, they say if points are "interest," in this case what they were charged was not "points" because they were never offered any other interest rate than 9.375%. They argue that to be points, the three percent must have been in exchange for a lower interest rate, which they say is not true.

### Standard of Review

A party filing a motion for summary judgment must prove by summary-judgment evidence that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." TEX.R. CIV. P. 166a(c); *e.g., Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Delta Air Lines, Inc. v. Norris*, 949 S.W.2d 422, 425 (Tex.App.-Waco 1997, writ denied). When we review for whether a disputed material fact issue exists, we must accept as true all evidence favorable to the non-movant. *Nixon*, 690 S.W.2d at 548–49; *Delta Air Lines*, 949 S.W.2d at 425. In addition, we must resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon*, 690 S.W.2d at 549; *Delta Air Lines*, 949 S.W.2d at 425. A summary judgment is reviewed *de novo*. *E.g., Rucker v. Bank One Texas, N.A.*, 36 S.W.3d 649, 653 (Tex.App.-Waco 2000, pet. filed Feb. 13, 2001).

Furthermore, quoting from *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 355 (Tex.2000):

> Plaintiffs for the purpose of inducing the Plaintiffs to enter into the home equity loan, and Plaintiffs relied upon the representation which turned out to be false in signing the home equity loan." The fraud and misrepresentation claims were not made a part of the summary judgment proceeding, were severed from the declaratory judgment action, and are not raised in this appeal or addressed in this opinion.

---

**3.** Presumably this is to comply with the three-percent rule.

**4.** The Tarvers claimed in their amended petition, without pleading specific facts, that Sebring and co-defendant Graham, Sebring's trustee for deeds of trust, committed fraud by making "false representations of a past or existing material fact pertaining to closing costs and interest rate and the false representation, when it was made, was told to the

When we interpret our state constitution, we rely heavily on its literal text and must give effect to its plain language. *See Republican Party of Tex. v. Dietz,* 940 S.W.2d 86, 89 (Tex.1997); *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148 (Tex.1995); *Edgewood Indep. Sch. Dist. v. Kirby,* 777 S.W.2d 391, 394 (Tex.1989). We strive to give constitutional provisions the effect their makers and adopters intended. *See City of El Paso v. El Paso Community College Dist.,* 729 S.W.2d 296, 298 (Tex. 1987); *Farrar v. Board of Trustees of Employees Retirement Sys. of Tex.,* 150 Tex. 572, 243 S.W.2d 688, 692 (1951). We avoid a construction that renders any provision meaningless or inoperative. *See Hanson v. Jordan,* 145 Tex. 320, 198 S.W.2d 262, 263 (1946). In construing a constitutional amendment, we may also consider its legislative history. *See* Tex. Gov't Code Ann. § 311.023(3); *Harris v. City of Fort Worth,* 142 Tex. 600, 180 S.W.2d 131, 133 (1944).

### *Are "points" considered "interest" or "fees"?*

■ Traditionally the homestead laws have been interpreted by Texas courts liberally in favor of the homestead owner. *E.g. Inwood North Homeowners' Ass'n v. Harris,* 736 S.W.2d 632, 634–35 (Tex.1987); *Rooms With a View v. Private Nat. Mortg.,* 7 S.W.3d 840, 847 (Tex.App.-Austin 1999, pet. denied), *cert. denied, National Ass'n of the Remodeling Industry–Houston Chapter, Inc. v. Rooms With a View, Inc.,* 531 U.S. 826, 121 S.Ct. 72, 148 L.Ed.2d 36 (2000). The Tarvers first assert that a liberal interpretation of section 50(a)(6)(E) should lead to the conclusion that points are "fees"; otherwise, lenders could disguise many "fees" as points and circumvent the three-percent rule. Second, they refer to section 50(a)(6)(L) which requires that the loan be "scheduled to be repaid in substantially equal successive monthly installments beginning no later than two months from the date the extension of credit is made, each of which equals or exceeds the amount of accrued interest as of the date of the scheduled installment." Therefore, they argue, if points are "interest" charged "up-front," they violate subsection L.

The Tarvers cite *First Bank v. Tony's Tortilla Factory,* a usury case, which says: "Fees which are an additional charge supported by a distinctly separate and additional consideration, other than the simple lending of money, are not interest and thus do not violate the usury laws." *First Bank v. Tony's Tortilla Factory,* 877 S.W.2d 285, 287 (Tex.1994). Points could be considered an "additional charge" exchanged for the consideration of lowering the interest rate, not in exchange for making the loan. Therefore, they say, under *First Bank's* definition points are not "interest." However, reliance on *First Bank* is misplaced because that case concerned whether bank fees for checks returned for insufficient funds were interest. The Supreme Court simply did not address the issue before us.

We note that points are calculated as a percent of the principal. That is how interest is calculated. The difference is that points are calculated once on the original principal balance, whereas interest is calculated monthly on a decreasing principal balance. In either case, there is a percent charged in relation to the principal balance. In addition, points are one of two forms of consideration paid by a borrower to a lender: (1) interest as a percentage of the principal balance, charged over time for the use of the money, and (2) points calculated as a percentage of the loan amount, charged "up-front" to obtain a lower interest rate.

But moreover, statutory and administrative definitions of and references to "interest" either expressly or impliedly include points:

- Bank loans: "(a) A bank may require a borrower to pay all reasonable expenses and fees incurred in connection with the making, closing, disbursing, extending, readjusting, or renewing of a loan ....... (d) Fees and expenses charged and collected as provided by this section are not considered a part of the interest or compensation charged by the bank for the use, forbearance, or detention of money." Tex. Fin.Code Ann. § 34.203 (Vernon 1998).

- Interest rates and usury: " 'Interest' means compensation for the use, forbearance, or detention of money. ..." Tex. Fin.Code Ann. § 301.002(a)(4) (Vernon Supp.2002).

- Consumer loans: "Prepaid Interest— Interest paid separately in cash or by check before or at consummation in a transaction, or withheld from the proceeds of the credit at any time. Some common terms such as points, discounts, and origination fees have been used to identify this charge." 7 T.A.C. § 1.102(20).

- Secondary loans: "Interest-bearing loan. In an interest-bearing secondary mortgage loan, an authorized lender may contract for, charge, or receive any rate of interest [allowed by law]. Prepaid interest in the form of points, such as origination or discount fees, may be contracted for, charged, or received by an originating lender, so long as the total amount of interest contracted for [does not exceed that allowed by law]." 7 T.A.C. § 1.701(b).

- Usury: "Discount points. Discount points are treated as interest. Discount points are aggregated with other interest charges for the purposes of a usury calculation." 7 T.A.C. § 1.707(f).

- From the "Regulatory Commentary on Equity Lending Procedures," a discussion of section 50(a)(6), issued jointly on October 7, 1998, by four departments in State government, the Office of Consumer Credit Commissioner, Department of Banking, Savings and Loan Department, and Credit Union Department:

  "The language [of "E"] specifically excludes interest from the [three-percent] limitation. The word "interest" means interest as defined in the *Texas Credit Title* and as interpreted by the courts of the state of Texas. Accordingly, charges that constitute interest under the law, including, for example, points, are not fees subject to the three percent limit. Fees that are required to be paid and that are not interest are subject to the three percent limitation. There is no restriction on a lender absorbing costs that might otherwise be fees and, therefore, covered by the fee limitation."

The Supreme Court has approved of the Commentary as an advisory from the four State agencies which regulate home equity loans. *Stringer,* 23 S.W.3d at 357.

By the plain language of the provision, as interpreted by reference to Texas statutes and administrative regulations, we conclude that points are not "fees" under subsection "E," because they are not charged to "originate, evaluate, maintain, record, insure, or service the extension of credit." Tex. Const. art. XVI, § 50(a)(6)(E). Therefore, we hold that points are a form of "interest" and not subject to the three-percent limitation. The trial court was correct in its ruling on this issue.

As to the Tarvers' other assertion about a violation of "L," that question was not raised in the trial court, and so it has not been preserved for appellate review. TEX.R. CIV. P. 166a(c); *McConnell v. Southside School Dist.*, 858 S.W.2d 337, 340–41 (Tex.1993).

### *Was there an exchange of "points" for a reduced interest rate?*

The Tarvers assert there is a fact issue about whether they were ever offered a higher interest rate which was later reduced in exchange for the points charged them. If not, then the three percent would not fit the definition of "points." A fact issue about that would preclude summary judgment.

Sebring's summary judgment evidence included a "Discount Point Acknowledgment" that the Tarvers signed at closing which stated that they were "electing to pay discount point(s) in this extension of credit in order to obtain a lesser interest rate," and that "instead of paying any discount point(s) [they] could have obtained a higher interest rate without any discount point(s)." Sebring also produced uncontroverted evidence of its standard interest-rate structure which described interest rates with and without the payment of points. Affiants swore that if the Tarvers had refused to pay "points," the interest rate would have been 12.375%.

The Tarvers responded with summary judgment evidence that (1) not until closing did they learn about being charged points, and (2) two written estimates of closing costs made before closing did not mention any other interest rate than 9.375%.

The "Discount Point Acknowledgment," without rebuttal evidence from the Tarvers, establishes that they knew at the closing they were exchanging points for a lower interest rate. In addition, there is no evidence in the record that would explain why the three percent was charged if it was not points. We conclude that there is no genuine issue of fact about whether the three percent charge was points.

### *Conclusion*

We hold that "points" as defined herein are "interest," not "fees," under section 50(a)(6)(E) of the Texas Constitution. The Tarvers' issues on appeal are overruled. The summary judgment is affirmed.