**Affirmed and Opinion filed August 8, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00695-CV

---

**SALLY SALAS AND SEFERINO SALAS, Appellants,**

**V.**

**LNV CORPORATION, Appellee.**

---

**On Appeal from the 190th District Court**
**Harris County**
**Trial Court Cause No. 2011-69383**

---

### O P I N I O N

Appellants Sally and Seferino Salas appeal the trial court's grant of summary judgment in favor of appellee LNV Corporation. On appeal, the Salases contend the trial court erred by (1) failing to file findings of fact and conclusions of law, (2) concluding that the Salases had no viable claims, and (3) granting LNV's motion for summary judgment on its action to foreclose on the Salases' homestead. We affirm.

## I

In January 2004, the Salases executed a promissory note payable to Argent Mortgage Company, LLC, to obtain a home-equity loan of $92,800. The debt was secured by a deed of trust on the Salases' home in Katy (the property). The note was indorsed by Argent to Ameriquest Mortgage Company, which then indorsed the note to Residential Funding Company, LLC. By subsequent allonge, the note was indorsed in blank by Residential Funding when it was negotiated to LNV, which is the current holder of the note. Through a series of assignments, LNV also became the beneficiary of the deed of trust. By March 1, 2010, the Salases had defaulted on their obligations under the note and the deed of trust and were $40,939.81 in arrears. As provided in the deed of trust, LNV served the Salases with the requisite notices of default and its intent to accelerate the maturity of the note.

In July 2011, LNV filed suit in the 190th District Court seeking foreclosure on the lien based on the Salases' default. In September, the Salases requested information concerning the details of the loan and the identity of the current owner of the debt from MGC Mortgage, Inc. (MGC), LNV's mortgage servicer. MGC responded, providing certain documents and directing the Salases to the attorney handling the foreclosure for additional information. On September 16, 2011, the Salases' attorney also sent a "Notice of Request to Cure" to LNV, asserting several alleged violations of article XVI, section 50(a)(6) of the Texas Constitution, and requesting that the alleged violations be cured within sixty days. On November 15, 2011, MGC responded to the notice letter on LNV's behalf and provided copies of documents relating to the origination of the loan.

In November, the Salases filed suit against LNV in the case under review in the 133rd District Court, seeking declaratory and injunctive relief to prevent the

foreclosure action from proceeding. The Salases' suit was later transferred to the 190th District Court. In their petition, the Salases asserted violations of the following provisions of article XVI, section 50(a)(6) of the Texas Constitution:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for:

. . .

(6) an extension of credit that:

. . .

(B) is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made;

. . .

(E) does not require the owner or the owner's spouse to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit;

. . .

(M) is closed not before:

(i) the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender for the extension of credit or the date that the lender provides the owner a copy of the notice prescribed by Subsection (g) of this section;

. . . and

(Q) is made on the condition that:

. . .

(v) at the time the extension of credit is made, the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit;

3

. . . [and]

(ix) the owner of the homestead and the lender sign a written acknowledgment as to the fair market value of the homestead property on the date the extension of credit is made[.]

Tex. Const. art. XVI, § 50(a)(6)(B), (E), (M)(i), (Q)(v), (Q)(ix).

LNV answered and asserted a plea to the jurisdiction, special exceptions, affirmative defenses, and a counterclaim for foreclosure. The Salases answered the counterclaim and asserted numerous affirmative defenses.

In April 2012, LNV filed a motion for summary judgment. In its summary-judgment motion against the Salases' claims, LNV argued that (1) the Salases presented no justiciable controversy and have no standing to obtain the declaratory relief they seek concerning the determination of the current holder of the mortgage and the amount owed on the mortgage, (2) LNV is entitled to summary judgment on the Salases' claims based on constitutional defects in the loan documents because the claims are barred by the statute of limitations and the Salases are estopped by their own representations and warranties, (3) LNV is entitled to summary judgment on the Salases' claim that LNV's attempt to foreclose is barred by the statute of limitations, and (4) LNV is entitled to summary judgment on the Salases' request for injunctive relief because they have no meritorious cause of action on which to base a permanent injunction and because the Salases' own actions preclude equitable relief.

Additionally, in support of its counterclaim for foreclosure, LNV claimed that, through a chain of assignments, it became the current owner and holder of the note and the beneficiary of the deed of trust authorizing foreclosure on the Salases' property in the event of a default. LNV also claimed that the Salases defaulted on their obligations under the note, LNV gave the Salases the requisite notices to cure the default and accelerate the maturity of the debt, and therefore LNV was entitled

4

to foreclose as provided in the deed of trust. LNV supported its claims with the affidavit of Bret Maloney, the Senior Vice-President of Default Management of MGC, and the documents attached to his affidavit, as well as certain documents attached to the Salases' petition.

In response, the Salases contended that they had standing to sue and that a justiciable controversy existed because the parties disputed whether LNV was an assignee of the note and had the right to foreclose. The Salases also argued that no statute of limitations applied to their claims based on violations of the Texas Constitution, and LNV had not demonstrated estoppel as a matter of law. The Salases further maintained that they were entitled to injunctive relief because only an injunction would prevent LNV from foreclosing. The Salases attached two exhibits to their response: (1) a copy of the Salases' "Notice of Request to Cure" and (2) a copy of the settlement statement prepared in connection with the loan.

LNV replied, disputing the Salases' arguments and attaching to its reply a copy of LNV's response to the Salases' request to cure, supported by a business-records affidavit.

On July 2, 2012, after considering the parties' briefing, the trial court granted a final summary judgment in favor of LNV. The trial court ordered that the Salases take nothing on their claims and ordered foreclosure of LNV's lien on the property. The judgment reflected that the Salases had "presented no grounds for a viable cause of action in [their] pleadings or summary[-]judgment evidence" and that LNV had "proven every element of its cause of action for foreclosure." This appeal followed.

## II

On appeal, the Salases raise three issues. In the first issue, the Salases contend that the trial court committed harmful error by failing to file findings of fact and conclusions of law. In the second and third issues, the Salases contend that the trial court erred in granting summary judgment because (1) the Salases presented grounds for a viable cause of action; and (2) LNV failed to prove every element of its counterclaim for foreclosure and failed to disprove at least one element of each of the Salases' defenses.

The summary-judgment movant has the burden to show there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). If there is no genuine issue of material fact, summary judgment should issue as a matter of law. *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex. 2001).

To be entitled to summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once a defendant establishes its right to summary judgment, the burden then shifts to the plaintiff to come forward with competent controverting summary-judgment evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Issues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal. Tex. R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist*., 858 S.W.2d 337, 341 (Tex. 1993).

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). We take all evidence favorable

to the non-movant as true and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.* When, as here, a trial court does not specify the basis on which summary judgment is granted, the appealing party must show that it is error to base it on any ground asserted in the motion. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## A

In their first issue, the Salases contend that the trial court reversibly erred by failing to file proposed findings of fact and conclusions of law. According to the Salases, the trial court "needed to explain its factual and legal basis" for its ruling. The Salases also contend they have preserved error because they timely complied with Rules 296 and 297 of the Texas Rules of Civil Procedure.

As LNV points out, however, findings of fact and conclusions of law have no place in a summary-judgment proceeding. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) (per curiam). The reason findings of fact and conclusions of law are inappropriate is that for summary judgment to be rendered, no genuine issue of material fact can exist, and the legal grounds are limited to those set forth in the motion and response. *IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997). The trial court should not make, and an appellate court cannot consider, findings of fact and conclusions of law in connection with a summary judgment. *Id*. Therefore, even if the Salases' requests were timely, the trial court did not reversibly err because findings of fact and conclusions of law were not warranted. We overrule the Salases' first issue.

## B

In their second issue, the Salases contend that they have a viable cause of action arising from alleged violations of article XVI, section 50(a)(6), of the Texas

Constitution.[1] In the same issue, the Salases further argue that they have standing to seek declaratory relief and that a justiciable controversy exists that is appropriate for declaratory judgment. Therefore, the Salases contend, the trial court erred by granting a take-nothing summary judgment against them.

1

As an initial matter, we first consider the issues of standing and the existence of a justiciable controversy. The gravamen of the Salases' issue is that the note and the deed of trust they executed still remain in the county records in the name of the original lender, and no subsequent assignments have been recorded. Having received no notice of any assignment of the note and the deed of trust, the Salases believe that the original lender is still the owner of the note and the deed of trust and that LNV is a stranger to the property. The Salases also argue that it is unclear what amounts are owed under the note and how the payments have been applied.

In response, LNV contends that the Salases do not have standing to question the identity of the note holder and have not alleged any facts or offered any summary-judgment evidence to set forth any justiciable controversy. According to LNV, matters such as the identity of the note holder and the amount owed on the note "call for nothing more than findings of fact that are not the subject of any genuine dispute." LNV further asserts that it has conclusively established with uncontroverted summary-judgment evidence the chain of indorsements and assignments by which it has become the owner and holder of the note and the deed of trust and that it is entitled to foreclose as provided in the deed of trust.

Standing is a constitutional prerequisite to maintaining suit. *See Tex. Ass'n*

---

[1] The Salases also contend in this issue that no statute of limitations bars their constitutional claims. For the reasons discussed below, we do not reach the parties' arguments concerning the applicability of the statute of limitations.

*of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Under Texas law, a party has standing to bring suit if (1) it has suffered a distinct injury, and (2) there exists a real controversy that will be determined by the judicial determination sought. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). This second component of standing refers to presentation of a justiciable issue. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245–46 (Tex. 1994). A declaratory judgment is appropriate only if a justiciable controversy exists concerning the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.w.2d 465, 467 (Tex. 1995); *see also* Tex. Civ. Prac. & Rem. Code § 37.002(b) (reflecting that the purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"). For a justiciable controversy to exist, there must be a real and substantial controversy involving a genuine conflict of tangible interest and not merely a theoretical dispute. *Bonham State Bank*, 907 S.W.2d at 467.

We conclude that the Salases have standing to assert their requests for declaratory and injunctive relief because a real controversy exists between the Salases and LNV as to whether LNV is entitled to collect on the promissory note by foreclosing on the property. *See Wells Fargo Bank, N.A. v. Ballestas*, 355 S.W.3d 187, 191–92 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding promissory-note makers had standing to bring prior declaratory judgment action against note holder and therefore prior judgment was not void); *Wolf v. Holy Cross Church of God in Christ*, 49 S.W.3d 1, 5 (Tex. App.—Tyler 1999), *rev'd on other grounds*, 44 S.W.3d 562 (Tex. 2001) (church, as maker of promissory note and deed of trust, had standing to seek declaratory relief against holder of promissory note and deed of trust).

We also conclude that the Salases' allegations in their petition concerning whether LNV has the right to foreclose on the property, whether the home-equity loan suffers from constitutional infirmities, and whether the statute of limitations bars LNV's action are appropriate matters for declaratory relief. *See* Tex. Civ. Prac. & Rem. Code. § 37.004(a) (providing that appropriate subject matters for relief include a determination of any question of construction or validity arising under an instrument, statute, ordinance, or contract); *cf. Rodarte v. Investeco Grp., L.L.C.*, 299 S.W.3d 400, 409 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding that determination of rights and liabilities of assignee of note and trustees of deed of trust with respect to proper notice of foreclosure and existence of surplus proceeds were justiciable controversies sufficient to qualify for declaratory judgment).

Having concluded that the Salases have standing and a justiciable controversy exists that is appropriate for resolution in a declaratory judgment, we must next determine whether, as the Salases maintain, the trial court erred in granting summary judgment against them on the merits of their constitutional claim.

2

The Salases argue that the trial court erred by ruling as a matter of law on their claim that the home-equity loan violated three specific provisions of article XVI, section 50(a)(6) of the Texas Constitution. According to the Salases, they gave LNV notice of these alleged violations, but LNV failed to timely cure them. Consequently, the Salases maintain, the lien on the property is forfeited.

Under section 50(a)(6), homeowners may apply for extensions of credit secured by their homestead so long as the borrowers and the lenders comply with certain enumerated requirements. *See* Tex. Const. art. XVI, § 50(a)(6); *Doody v.*

10

*Ameriquest Mortg. Co.*, 49 S.W.3d 342, 343 (Tex. 2001). Section 50(a)(6) also provides that a lender or holder of the note for a home equity loan

> shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply . . . .

Tex. Const. art. XVI, § 50(a)(6)(Q)(x). Further, section 50(c) provides that no mortgage, trust deed, or other lien on the homestead "shall ever be valid unless it secures a debt described by this section." *Id.* § 50(c).

In its summary-judgment motion, LNV argued that the Salases were contractually estopped from asserting that LNV failed to cure the alleged constitutional violations because the Salases made contrary representations and averments when they closed on the loan.[2] LNV specifically pointed to a document the Salases executed at closing, titled "Texas Home Equity Affidavit and Agreement." In that document, the Salases represented and warranted, among other things, that: (1) the principal did not exceed eighty percent of the fair market value of the property, (2) the note and security instrument (deed of trust) were not signed before the twelfth day after the date they submitted an application to the lender, and (3) they and the lender signed a written acknowledgement as to the fair market

---

[2] Estoppel by contract, a form of quasi-estoppel, applies to preclude a person from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Forney 921 Lot Dev. Partners, I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied). Quasi-estoppel is a term applied to certain legal bars, such as ratification, election, acquiescence, or acceptance of benefits. *Id.*; *Steubner Realty 19, Ltd. v. Cravens Rd. 88, Ltd.*, 817 S.W.2d 160, 164 (Tex. App.—Houston [14th Dist.] 1991, no writ). Unlike equitable estoppel, quasi-estoppel requires no showing of a false representation or detrimental reliance. *Forney 921 Lot Dev. Partners, I, Ltd.*, 349 S.W.3d at 268; *Steubner Realty 19, Ltd.*, 817 S.W.2d at 164.

value of the property on date the loan was made.[3] The Salases further averred as follows:

> I understand that my execution of this Texas Home Equity Affidavit and Agreement is made to induce Lender and its successors and assigns to make or purchase the Extension of Credit, and that Lender and its assigns will rely on it as additional consideration for making or purchasing the Extension of Credit. I also understand that each of the statements made in the Representations and Warranties Section is material and will be acted upon by the Lender and its assigns, and that if such statement is false or made without knowledge of the truth, the Lender and its assigns will suffer injury.

According to LNV, the representations and warranties the Salases made in this document directly contradicted the allegations of constitutional violations made in their petition. LNV also points out that the Salases offered no proof in their response to controvert their sworn statements.

On appeal, the Salases contend they raised genuine issues of material fact on alleged violations of subsections (B), (E), and (M)(i) of section 50(a)(6). We address each contention in turn.

**Alleged Violation of Subsection (B).** Under subsection B, the principal of the loan, when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead, may not exceed 80 percent of the fair market value of the property on the date the extension of credit is made. *See* Tex. Const. art. XVI, § 50(a)(6)(B). The Salases argue that, to avoid running afoul of this provision, their home had to be valued at or above $116,000 to support the loan amount of $92,500. The Salases

---

[3] The Home Equity Affidavit and Agreement did not specifically address the requirement of subsection (E) that the home-equity loan not require the owners to pay fees exceeding three percent of the principal amount. *See* Tex. Const. art. XVI, § 50(a)(6)(E). However, as will be discussed further below, the Salases failed to raise a genuine issue of fact in either their response to LNV's summary-judgment motion or their appellate brief.

contend they raised a fact issue on this point by presenting an appraisal-district valuation of their property reflecting that in 2004, when the loan was made, the property's appraised value was $104,800.[4]

Although the alleged appraisal-district valuation was attached to the Salases' petition, the Salases did not refer to or offer the document as evidence supporting their summary-judgment response. Pleadings and their attachments do not constitute summary-judgment proof. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979); *see also Heirs of Del Real v. Eason*, 374 S.W.3d 483, 488 (Tex. App.—Eastland 2012, no pet.) ("Unverified documents attached to pleadings are not proper summary[-]judgment evidence.").

Even if we were to consider the document, it does not create a fact issue to controvert the Salases' sworn statements in the Home Equity Affidavit and Agreement that the principal of the loan did not exceed 80 percent of the fair market value of the property. In its reply to the Salases' summary-judgment response, LNV included an appraisal prepared by a state-certified appraiser for the original lender reflecting that the Salases' property was valued at $116,000 at the time of the closing. Also included was an "Affidavit of Acknowledgment as to Fair Value of Homestead Property" executed by the Salases. In this affidavit, the Salases swore under oath that as of the date of closing, they agreed that the fair market value of their property was $116,000. The Salases also acknowledged their agreement to the fair market value as a condition of making the loan, and they disclaimed any knowledge or reason to believe that the fair market value of their property as set forth in the affidavit was incorrect. On these facts, the appraisal district's valuation merely reflects a different value assigned for the taxing

---

[4] As LNV points out, the document is an unauthenticated "screen shot" from a website and does not does not expressly identify the property to which the valuation applies.

13

authority's purposes.[5] It does not raise a fact issue as to either the correctness of the appraisal made in connection with the loan or the Salases' sworn statement that this appraisal was correct.

The Salases did not offer any sworn statement or other evidence to contradict or disclaim the statements they swore to in the affidavits they executed at closing. Therefore, the trial court did not err in concluding that the Salases failed to raise a fact issue on LNV's defense that the Salases were precluded by their representations at closing from asserting that the home-equity loan violated subsection (B) of section 50(a)(6). *See Tarver v. Sebring Cap. Credit Corp.*, 69 S.W.3d 708, 713 (Tex. App.—Waco 2002, no pet.) (holding borrowers' signed acknowledgement that they were electing to pay discount points, absent rebuttal evidence, established they knew at closing they were exchanging points for a lower interest rate and therefore no fact issue was raised precluding summary judgment for lender on borrowers' request for declaratory relief under section 50(a)(6)(E)).[6]

**Alleged Violation of Subsection (E)**. Subsection (E) provides that the borrowers may not be required "to pay, in addition to any interest, fees to any person that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed . . . three percent of the original principal amount" of the loan. Tex. Const. art. XVI, § 50(a)(6)(E). According to the Salases,

---

[5] The printout includes a disclaimer that appraised value "may be less than the property's January 1 market value if the property is a residence homestead and is subject to a cap on annual increases in appraised value."

[6] In their reply brief on appeal, the Salases contend that the acknowledgment of fair market value cannot conclusively be relied on because it is missing the lender's signature and so does not comply with subsection (Q)(ix) of section 50(a)(6). However, we are not required to consider issues raised for the first time in a reply brief. *See* Tex. R. App. P. 38.3; *see also Anderson Producing Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996) (declining to consider issue first raised in reply brief). In any event, the Salases offer no evidence or substantive argument to controvert their sworn representations in the Texas Home Equity Affidavit and Agreement that the document was in fact signed by both them and the lender.

fees should not have exceeded $2,784.00 (3 percent of the loan amount), but the fees shown on the settlement statement prepared in connection with the loan were actually $4,811.75. Below, LNV argued in reply that a lender credit appearing on the settlement statement reduced the fees to an amount that did not exceed 3 percent of the loan. On appeal, the Salases do not dispute LNV's contention; instead, they argue that taking four additional line items into account would cause the total fees to exceed 3 percent of the loan amount. However, three of the additional line items suggested reflect no amount to be paid from the Salases' funds at settlement. The other line item provides for payment of daily interest for a stated period; but the plain language of subsection (E) expressly excludes interest as a fee. *See id.*; *Tarver*, 69 S.W.3d at 709. Therefore, the trial court did not err by concluding no fact issue was raised as to a violation of subsection (E).

**Alleged Violation of Subsection (M)(i)**. Subsection (M)(i) provides in relevant part that the loan may not close before "the 12th day after the later of the date that the owner of the homestead submits a loan application to the lender." Tex. Const. art. XVI, § 50(a)(6)(M)(i). Below, in the fact section of their response brief, the Salases mentioned that "[t]he original application was submitted less than 12 days before closing," but they did not offer any substantive argument or provide any supporting evidence or authorities concerning this complaint. Nor did the Salases offer any evidence to controvert or disclaim their sworn representations to the contrary in the Texas Home Equity Affidavit and Agreement. In its reply below, LNV further responded to the Salases' argument by pointing to evidence showing that the loan application was dated December 8, 2003, and the closing occurred on January 15, 2004—more than twelve days later.

On appeal, the Salases appear to concede that the loan application was submitted more than twelve days before the closing, but they argue that

15

"[n]otwithstanding any response to [the Salases'] notice to cure by [LNV], there is a genuine issue of material fact." The meaning of this statement is unclear, as the Salases do not identify the purported fact issue to which they refer. Absent any controverting evidence, LNV established that the closing occurred more that twelve days after the loan application was submitted, demonstrating that there was no violation of subsection (M)(i). Accordingly, we hold that the trial court did not err by concluding that LNV conclusively demonstrated that the home-equity loan and its accompanying lien were not in violation of subsections (B), (E), and (M)(i) of section 50(a)(6).

On the second issue, therefore, we agree with the Salases' arguments as to standing and the existence of a justiciable controversy, but we overrule the Salases's complaint that the trial court erred by granting summary judgment on their constitutional claim.

C

In their third issue, the Salases contend that LNV was not entitled to summary judgment on its foreclosure claim because: (1) there is a genuine issue of material fact as to who owns the deed of trust with the authority to foreclose; (2) there is evidence suggesting that LNV is not the holder of the note because LNV has failed to produce any evidence that the note was ever indorsed to LNV, which is required to show negotiation; and (3) LNV may not foreclose because it violated subsections (B), (E), and (M)(i) of article XVI, section 50(a)(6) of the Texas Constitution.

In support of its counterclaim for foreclosure, LNV presented evidence establishing that it was the current owner and holder of the note and the beneficiary under the deed of trust. It also provided uncontroverted testimony that the Salases defaulted under the note and the deed of trust. Further, the deed of trust specifically

16

authorizes LNV, as the beneficiary, to foreclose in the event of default. The Salases presented no evidence or substantive argument to disprove LNV's evidence supporting its counterclaim. Nor did the Salases controvert LNV's evidence that the Salases defaulted on their loan, making any alleged issue concerning the amounts owed by the Salases or how any payments were applied irrelevant.[7]

Presuming for the sake of argument that LNV must be the holder of the note to be able to foreclose, indorsement of the note to LNV is not required for negotiation because the note was indorsed in blank. *See* Tex. Bus. & Com. Code § 3.205(b); *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *5 (Tex. App.—Austin Aug. 30, 2012, no pet.) (mem. op.). And, as discussed above, the trial court did not err by concluding that LNV conclusively proved that there was no violation of subsection (B), (E), or (M)(i) of article XVI, section 50(a)(6) of the Texas Constitution.

Therefore, under the facts and circumstances of this case, LNV demonstrated as a matter of law that it was entitled to foreclose. *See Kyle v. Countrywide Home Loans, Inc*., 232 S.W.3d 355, 362 (Tex. App.—Dallas 2007, pet. denied) (holding that summary-judgment evidence consisting of sworn affidavit of Countrywide's foreclosure specialist attesting to the Kyles's default and the deed of trust, which expressly gave Countrywide the right to seek judicial foreclosure in the event of default, was sufficient to entitle Countrywide to judgment as a matter of law on its claims against the Kyles).

Accordingly, the trial court did not err in granting summary judgment in

---

[7] Indeed, in response to LNV's motion for summary judgment on its counterclaim, the Salases simply "answered" each paragraph of LNV's motion with admissions, denials, or an inability to admit or deny.

17

favor of LNV on its counterclaim to permit its foreclosure on the Salases' property.[8] Moreover, LNV affirmatively demonstrated that it was the current owner of the note and beneficiary of the deed of trust entitling it to foreclose on the property, and the trial court did not err in granting summary judgment in favor of LNV on the Salases' requests for declaratory and injunctive relief.

* * *

We affirm the trial court's judgment.


/s/    Jeffrey V. Brown
Justice


Panel consists of Justices Frost, Brown, and Busby.

---

[8] Because we do not reach the parties' arguments concerning whether the Salases' claims or defenses are barred by the statute of limitations, we deny as moot LNV's motion to strike the Salases' supplemental brief on the limitations issue.