**Affirmed in Part, Reversed in Part and Remanded and Memorandum Opinion filed May 9, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00131-CV

---

## THAO VAN DAO, PHUONG THU NGUYEN, KIENG KIN HUYNH, THUA THI LUONG, AND THUY THU NGUYEN, Appellants

### V.

### THE QUOC TRINH, Appellee

---

**On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Cause No. 117491-CV**

---

## MEMORANDUM OPINION

Appellants—a group of five individuals who contributed money for membership in a religious community—appeal the trial court's order granting the plea to the jurisdiction filed by appellee—the person who appellants alleged approached them, then requested, secured and allegedly misapplied their money for the benefit of a different religious community. The challenged order dismissed appellants' claims with prejudice upon the trial court's express finding that

appellants lacked standing to bring their fraud and breach of contract claims. Concluding that the record supports appellant Dao's standing to assert his claim based on a breach of a loan agreement, we reverse in part, and concluding that the record does not support appellants' claim to recover their charitable donations, we affirm in part, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs-Appellants Thao Van Dao, Phuong Thu Nguyen, Kiem Nga Dinh, Thua Thi Luong, and Thuy Thu Nguyen, (collectively referred to as "the Temple Donor Parties"), originally brought this lawsuit on April 18, 2022 against appellee The Quoc Trinh ("Trinh"), in Brazoria county district court ("trial court").

*Plaintiffs' Fifth Amended Petition, the "Live Pleading"*

On January 4, 2023, the Temple Donor Parties filed their Fifth Amended Petition ("Live Pleading") which set out two types of claims: fraud and breach of contract.

The fraud claims are asserted by all Temple Donor Parties against Trinh based on Trinh's alleged misrepresentations about the existence or nature of a non-profit religious organization and the construction of its temple for which Trinh solicited contributions and loans. The Live Pleading alleges that Trinh solicited contributions and loans for an organization called Cao Dai Temple Houston Texas, that "[appellants] contributed a combined total of $309,240, which included a $100,000 personal demand loan to [Trinh] from [Dao]," and that appellants were unaware that this money was directed to a non-member organization, owned and controlled by Trinh called "The Great Way Research & Development Center, Inc." (also referred to as the "the Great Way"), which at the time of its formation was intended to establish a "Holy Mother Temple."

2

Appellant Dao also asserts an independent breach-of-contract claim alleging that Dao loaned Trinh $100,000 with the agreement that the loan would be repaid upon demand. Dao alleges that he demanded repayment in 2021 but that Trinh has refused to repay.

*Trinh's Plea to the Jurisdiction challenging standing*

On January 6, 2023, appellee Trinh filed his Plea to the Jurisdiction ("the Plea"), challenging appellants standing to sue him. The Plea is supported by a business records affidavit, which attaches articles of incorporation for Trinh's non-profit organization, 2012 amendments to the corporation, and records of appellants' donations.[1] The Plea is expressly based on—and makes repeated references to—our holding in *Eshelman v. True the Vote, Inc.*[2] In this regard, the Plea alleges and supplies evidence "that Cao Dai Temple is a non-profit corporation which is a church," that "[Trinh] is a Director of Cao Dai Temple," and that "Cao Dai Temple is a 'charitable trust' under Texas law." The Plea alleges that "[the Temple Donor Parties] purportedly have filed suit for the return of general charitable contributions which [the Temple Donor Parties] allegedly made to Cao Dai Temple," that these "donations to Cao Dai Temple were general in nature and not made conditional in any way," and that under *Eshelman* if they lacked standing to sue the Cao Dai Temple then they likewise lacked standing to sue its director. As support for the allegation that the contributions were made without condition, Trinh provides various receipts and acknowledgments for the Temple Donor Parties various donations.

---

[1] The articles of incorporation illustrates that Trinh formed The Great Way Research & Development Center, Inc. ("Great Way") on August 30, 1999. In 2012 Trinh changed the name from "The Great Way Research and Development Center" to "Cao Dai Temple Houston Texas Inc.""

[2] 655 S.W.3d 493 (Tex. App.—Houston [14th Dist.] 2022, no pet.).

While these *Eshelman*-based arguments target all claims asserted, Trinh also includes a section of his Plea separately targeting Dao's breach-of-contract claim. Trinh asserts that Dao's claim (i) fails to disclose any required elements of an alleged loan; (ii) fails to attach a written loan agreement; (iii) violates the statute of frauds; and (iv) is unenforceable to the statute of limitations. As a result of these deficiencies, Trinh argues that Dao lacks standing to pursue his breach of contract claim.

*Response to the Plea to the Jurisdiction*

The Temple Donor Parties filed a Response to the Plea ("Response"), supported with appellant Dao's affidavit and Trinh's acknowledgment of appellants' various donations. Their Response argues that Trinh mischaracterizes their lawsuit as asserting *Eshelman*-like claims based on contributions "to an entity that actually exists" and states by contrast "this case involves knowing false representations by an individual about an entity that did not exist." In summary fashion appellants addressed standing, stating they had suffered "a particularized injury distinct from that suffered by the public at large," for having been cheated "out of their money based on known false representations by [Trinh]."

In Dao's affidavit he explains how in 1999, Trinh approached Dao and others and asked him to contribute to and join an entity that he called Cao Dai Temple Houston Texas ('Cao Dai Houston'). The affidavit continues:

> "As part of that conversation, [Trinh] told me that I would be a member of Cao Dai Houston. I had been a Cao Dai follower in Vietnam, not Holy Mother, which is different, and was happy to hear that there was a Cao Dai organization in Houston of which I would be a member and the purpose of which was to build a Cao Dai temple."

> I agreed and 'joined' what was explained to me as Cao Dai Houston. All throughout the 2000s, we would have regular worship, had frequent meetings, and would receive mailers with 'Cao Dai Houston'

4

headers.

. . .

In 2009, [Trinh] approached me to contribute money to Cao Dai Houston. Believing [Trinh] that the money was going to Cao Dai Houston, on July 18, 2009, I contributed $1,700; on October 8, 2009, I contributed $5,000; on April 10, 2011, I contributed $5,000; and on April 10, 2011, I contributed an additional $5,000.

At no time, did [Trinh] tell me that there was no Cao Dai Houston and that the entity the money was going to was the Great Way Research & Development Center, Inc. He never disclosed to me that the Great Way Research & Development Center had no members and the purpose of which was to build the Female Buddha Shrine, not the Cao Dai Temple.

No documents reflecting the $100,000 loan are included, but without significant description of its terms or conditions, Doa's affidavit briefly mentions the $100,000 loan as having been lent to Trinh "to make a deposit before City Bank in Houston would lend the money."

*Order and Subsequent Proceedings*

On January 26, 2023, the trial court issued an order finding "[the Temple Donor Parties] lack standing to sue," granting Trinh's Plea to the Jurisdiction, and dismissing with prejudice all claims (by all appellants) against Trinh. The Temple Donor Parties timely filed this appeal.

**II. STANDING**

On appeal, the Temple Donor Parties argue that the trial court erred in dismissing their case for lack of standing on Trinh's Plea to the Jurisdiction. They first argue that evidence attached to Trinh's Plea worked more to support rather than challenge the Temple Donor Parties' standing allegations.[3] The Temple

---

[3] E.g., "Trinh asserted, but did not show with sufficient evidence, that the trial court lacked subject matter jurisdiction. . ." and that "Trinh's own evidence demonstrates the existence of

5

Donor Parties also argue that their pleadings and the evidence they provided to the trial court in response to the Plea, taken with the evidence supplied by Trinh, established jurisdictional facts for the fraud claim. With respect to appellant Dao's breach of contract claim, he argues that his Live Pleading sufficiently alleged facts to support his standing and that Trinh failed to assert a valid challenge to his standing in his plea and failed to offer any evidence to contradict his standing.

### *Standard of Review and the law of Standing*

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). A defendant may use a plea to the jurisdiction to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). We review de novo a trial court's ruling on a plea to the jurisdiction. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

Standing is a component of subject matter jurisdiction. *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). Standing is the component of subject matter jurisdiction at issue in this appeal, and to analyze standing the supreme court has stated:

> In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.... The plaintiff must be personally injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large) suffered the injury.... [The injury] must be concrete and particularized, actual or imminent, not hypothetical.... [T]he plaintiff's alleged injury must be fairly traceable to the defendant's conduct.... [And] the plaintiff's alleged injury [must] be

disputed fact issues on standing."

6

likely to be redressed by the requested relief.

*Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016) *citing Heckman v. Williamson Cty.,* 369 S.W.3d 137, 154–55 (Tex. 2012). The standing analysis begins with determining the nature of the wrong being alleged and whether there was a causal connection between a defendant's conduct and the injury caused by the alleged wrong. *Linegar*, 495 S.W.3d at 279. We assess standing on a claim-by-claim basis. *See Heckman*, 369 S.W.3d at 153. Accordingly, we will first review the Temple Donor Parties' claims seeking return of their donations and then turn to Dao's claim seeking for performance under a loan agreement.

### Did the trial court err when it dismissed the Temple Donor Parties' fraud claims against Trinh for lack of standing?

We first consider whether the trial court erred in granting the plea to the jurisdiction as to the Temple Donor Parties' fraud claims for lack of standing.

No party disputes that the Cao Dai organization in question, for which Trinh is the founder and director, is a "charitable trust". This is particularly significant because the attorney general "is the representative of the public and is the proper party to maintain" a suit "vindicating the public's rights in connection with that charity." *Nacol v. State*, 792 S.W.2d 810, 812 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *see also* Tex. Prop. Code § 123.002 (attorney general's participation in proceeding involving charitable trust). A private individual has standing to maintain a suit against a public charity only if the person seeks vindication of some peculiar or individual rights, distinct from those of the public at large. *Eshelman*, 655 S.W.3d at 499. Moreover, a private individual must similarly establish standing in a case such as this, brought against the trustee of a public charity in connection with their office or service. *Id.* at 501.

7

The Temple Donor Parties alleged that they anticipated that their donations were directed to Coa Dai Houston, a membership organization. Because they allege such an organization *never existed*, they each seek return of the amounts of their respective contributions.  However, Trinh presented uncontested evidence that the donations were directed to a Cao Dai Houston organization, that Great Way had previously "used the assumed name 'Cao Dai Temple Houston Texas' and then formally changed its name to 'Cao Dai Temple Houston Texas Inc.'"  In his Plea, Trinh contended that the Temple Donor Parties' contributions were "unconditional" donations, or gifts, and accordingly that they lacked standing to seek recovery of their donations.  As evidentiary support Trinh attached a business records affidavit from the organization, including acknowledgements[4] and receipts for Temple Donor Parties' donations which included the conspicuous header identifying the organization:

GREAT WAY R & D CENTER, INC

CAO DAI TEMPLE OF HOUSTON TEXAS

Trinh's Plea established that since 1999, under Great Way he operated a Cao Dai temple and received donations under the combined registered name (Great Way R & D Center, Inc) and assumed name (Cao Dai Temple of Houston Texas). The Temple Donor Parties' own allegations and evidence established that they worshiped with Trinh in the 2000s.

Dao presented affidavit testimony[5] that describes the circumstances of his donations but fails to raise any fact issue as to any jurisdictional fact.  In the

---

[4] Trinh also offered a translator's affidavit which translates the donation acknowledgements, which each state: "By your offering merit, pray to the Supreme Being and our **Holy Buddha Mother** bless you and keep you safe, my Brother/Sister and your family".  (emphasis added).

[5] None of the other Temple Donor Parties provided testimony to support their Response.

8

affidavit he states that he was told he could "contribute to and join" Cao Dai Houston and that he would be a member," but also that he "agreed and 'joined' what was explained to [him] as Cao Dai Houston," that during the 2000s he spent a lot of time with Trinh and that he and others "would have regular worship, had frequent meetings, and would receive mailers with 'Cao Dai Houston' headers." The affidavit states that in the "Fall of 2021" Dao was told that the entity he had known to be "Cao Dai Houston," and on that basis had contributed money to be a member, "had all along been Great Way Research & Development Center, Inc." had a purpose "to build the Female Buddha Shrine" and conferred no membership status to anyone.

Both sides discuss the *Eshelman* case and compare it favorably to their respective positions in this case. In *Eshelman*, a party sued a "charitable trust" (nonprofit) for the return of his donations alleging breach of contract, fraud, negligent misrepresentation, and conversion and sued the officers, directors, and employees of the "charitable trust" for the return of his donations alleging fraud. *Eshelman*, 655 S.W.3d at 496-97. The court affirmed the trial court's dismissal of Eshelman's claims stating that in response the defendants' plea to the jurisdiction, "he failed to support [his response] with any evidence." *Id.* at 501, 503. The *Eshelman* court also held that if a party lacks standing to sue a "charitable trust" for the return of contributions, the party cannot get around that lack of standing by suing directors of the same entity alleging fraud and similarly lack standing to bring such claims. *Id.* at 501.

The Temple Donor Parties point to the distinction between this case and *Eshelman* — that the primary allegations in this case are fraud claims and those in *Eshelman* are based on a contract. *See Linegar*, 495 S.W.3d at 279. Indeed, the duty not to commit fraud is different from and independent of the duty to comply

9

with the terms of a contract. *See Formosa Plastics Corp.*, 960 S.W.2d at 47–48;[6] *Peterson Group, Inc. v. PLTQ Lotus Group, L.P.*, 417 S.W.3d 46, 63 (Tex. App.— Houston [1st Dist.] 2013, pet. denied). However, in evaluating standing we first determine the nature of the alleged wrong—which here is strikingly similar to *Eshelman*. The nature of the alleged wrong in *Eshelman* was that the defendants allegedly failed to meet Mr. Eshelman's expectations in their use of his donation to TTV, the charitable trust; that Eshelman agreed to provide a conditional gift to TTV based on an alleged mutual understanding his money would be used for particular purposes. *See Eshelman*, 655 S.W.3d at 497-501.

Although they allege no conditional gift as in *Elshelman*, the Temple Donor Parties similarly seek recovery of their donations, and like *Eshelman*, seek to recover those funds under a claim of fraud. The Temple Donor Parties' pleadings and to some extent their proof shows that the Temple Donor Parties were approached by Trinh to contribute and participate in his Cao Dai organization, that appellants each donated money based on the belief that in doing so they "joined" the organization as members, and in fact—for a number of years—participated as members with Trinh and worshiped in the organization, but were subsequently dissatisfied with the direction of the organization and their membership status. None of the Temple Donor Parties provided testimony or evidence[7] describing the character of membership that they were allegedly deprived. Contradicting the

---

[6] *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex. 1998)("A fraud cause of action requires "a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. However, the mere failure to perform a contract is not evidence of fraud.")(internal citations omitted).

[7] Other than appellant Dao, none of the other Temple Donor Parties provided any affidavit testimony describing their transactions with Trinh; they rely on general assertions in Dao's affidavit.

10

notion they were deprived membership in any capacity, Dao's affidavit illustrates they all participated in the organization as members of the religious community. Moreover, Dao's affidavit fails to address the various references to the "Holy Budda Mother" in the acknowledgments that were provided to the Temple Donor Parties with their donations, and in turn fails to offer essential proof to support their reasonable reliance that the organization was not affiliated with the Holy Mother to support a fraud claim. *See 2017 Yale Dev., LLC v. Steadfast Funding, LLC*, No. 01-20-00027-CV, 2023 WL 3184028, at *20 (Tex. App.—Houston [1st Dist.] May 2, 2023, pet. denied) (plaintiffs affidavits and evidence failed to raise genuine issue of material fact on element of reasonable reliance to support fraud claim on summary judgment); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 791 (Tex. App.—Houston [14th Dist.] 2004, no pet.)(same).

Based on the holding in *Eshelman*, we conclude the Temple Donor Parties' allegations and proof for their fraud claims pertaining to their donations to a charitable fails to establish standing to bring their claims (whether under a fraud theory or conditional gift theory); that is, the facts alleged and undisputed do not vindicate of some peculiar or individual rights, distinct from any other donor or from the public at large. *See Eshelman*, 655 S.W.3d at 500-501.

Dao's affidavit does not provide sufficient evidence to carry his or any of the other Temple Donor Parties' burden of proof to support their assertion of standing to recover their donations on their fraud allegations. Although the Temple Donor Parties provided evidence to support their response, the end result is still like *Eshelman*, as there is no evidence that they suffered a particularized injury distinct from that of any other donor or from the public at large. *Eshelman*, 655 S.W.3d at 501.

11

***Did the trial court err when it dismissed appellant Dao's breach of contract
claim against Trinh for lack of standing?***

We next consider whether the trial court erred in granting Trinh's plea to the jurisdiction as to appellant Dao's breach of contract claim, and first consider appellant Dao's argument that Trinh's plea "failed to shift the burden to the plaintiff to prove anything." Appellant Dao's breach-of-contract claim based on the "personal demand loan" is set out in the Live Pleading as follows:

> Plaintiff Thao Van Dao personally loaned Defendant $100,000, with the agreement that the loan would be repaid upon demand. Plaintiff Thao Van Dao fulfilled his obligation under the loan by tendering the proceeds. Plaintiff Thao Van Dao made demand for payment in 2021. Defendant refused and continues to refuse to repay the loan as agreed. As such, Plaintiff Thao Van Dao has been damaged in the amount of $100,000.[8]

Dao's claim based on his personal loan is significantly different than the claims he joined the Temple Donor Parties in asserting; here, he's not attempting to recover a donation, but rather the repayment of the loan, disconnected to the the organization, its practices, or his membership.

The section of Trinh's Plea that challenges Dao's breach-of-contract claim almost entirely is made up of arguments challenging the allegations and existence of facts that pertain to the *merits* of appellant Dao's breach-of-contract claim. A review of the record reveals that the only content within the section of Trinh's Plea that challenges Dao's *standing* to bring the breach-of-contract claim is his bare assertion that ". . .Dao lacks standing to assert his [breach-of-contract claim]." Whether the four or five challenges Trinh asserts to the merits of Dao's breach-of-contract claim are meritorious is not for us to decide; nor were such grounds valid to support the trial court dismissal for lack of standing. It is true that facts to

---

[8] Trinh does not discuss, nor do we analyze, Dao's separate breach of contract claim—which bear no resemblance to a conditional gift—through the lens of *Eshelman*.

support the merits of a breach-of-contract claim (as well as other claims) can overlap with the jurisdictional facts such that a challenge to the existence of those facts provides a valid argument in a subject matter-jurisdiction challenge. *See Miranda*, 133 S.W.3d at 226. However, neither Trinh's Plea nor his Brief on appeal demonstrate that overlap or provide the authority to show that any of the deficiencies Trinh has cited pertaining to the merits of Dao's claim are also deficiencies that implicate Dao's standing. Thus, we agree with Dao that Trinh's Plea failed to shift the burden to Dao to submit proof of jurisdictional facts on his breach of contract claim. Having reviewed Dao's Live Pleading, we conclude the breach-of-contract claim, while terse, adequately alleges facts sufficient for his standing for an unpaid personal loan such that Dao suffered an alleged injury (nonpayment) that is concrete and particularized ($100,000), personal, actual, imminent, not hypothetical, and if supported by facts is likely to be redressed by the requested relief. *See Salas v. LNV Corp.*, 409 S.W.3d 209, 216 (Tex. App.—Houston [14th Dist.] 2013).

Because Trinh failed to establish that appellant Doa lacked standing to maintain his breach of contract claims, the trial court erred in dismissing his claim for lack of standing.

### III. CONCLUSION

The trial court properly dismissed the Temple Donor Parties' claims seeking recovery of their donations for lack of standing. To the extent any jurisdictional facts alleged by appellant Dao were contradicted by appellee's Plea, Dao supplied the necessary evidence to present a fact issue as to his claim for breach of personal demand loan. Therefore, it was error for the trial court to conclude the appellant Dao lacked standing to pursue a claim based on the breach of a personal demand loan and dismiss the suit based on lack of standing. Otherwise, judgment of the

13

trial court is affirmed in part, and reversed in part and the case is remanded for further proceedings consistent with this opinion.


/s/     Randy Wilson
Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.