**AFFIRM; and Opinion Filed August 28, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00619-CV

**LUIS A. AND LINDA A. SANTIAGO, Appellants**

**V.**

**NOVASTAR MORTGAGE, INC.,**
**THE BANK OF NEW YORK MELLON, AS TRUSTEE,**
**OCWEN LOAN SERVICING, LLC,**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,**
**OCWEN FINANCIAL CORPORATION, AND**
**THE BANK OF NEW YORK MELLON CORPORATION, Appellees**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-02073-2011**

## OPINION

Before Chief Justice Wright, Justice Bridges, and Justice Richter[1]
Opinion by Justice Richter

Luis A. and Linda A. Santiago appeal a summary judgment in this dispute involving a home equity loan. The Santiagos contend that they raised genuine issues of material fact precluding summary judgment on their claims and on appellees' counterclaims. We affirm the trial court's judgment.

---

[1] The Hon. Martin Richter, Justice, Assigned

**BACKGROUND**

The Santiagos own a home in Frisco, Texas. On May 14, 2004, the Santiagos obtained a home equity loan in the amount of $999,999 from appellee Novastar Mortgage, Inc. (Novastar). Most of the loan proceeds, $858,964.77, were used to retire an existing lien on the property. The remaining $120,952.27 was paid to the Santiagos. The Santiagos made payments on the loan until 2010. The monthly payments almost doubled at that time, and the Santiagos fell into default.

This suit was brought on May 16, 2011, seven years after the closing. In the original petition, Luis Santiago asserted claims against Novastar, The Bank of New York Mellon, successor in interest to JP Morgan Chase Bank, as Trustee for the registered holders of Novastar Mortgage Funding Trust Series 2004-2 Equity Loan Asset-Backed Certificates 2004 (BONY), Ocwen Loan Servicing, LLC (Ocwen LS), and Mortgage Electronic Registration Systems, Inc. (MERS). Santiago asserted claims for fraud by nondisclosure, breach of contract, and to quiet title, alleging that after the closing of the home equity loan, the defendants filed for record a document entitled Texas Home Equity Affidavit and Agreement (Affidavit) on which his signature was forged. He also alleged that a copy of the Affidavit bearing the forged signature was not provided to him as required under the Texas Constitution, despite two written requests. He alleged that he had made the first and subsequent payments on the loan, but defendants had accelerated the indebtedness and executed a transfer of lien on the property. Alleging that the loan was void, illegal, and unenforceable, Santiago sought declaratory relief and damages.

On June 10, 2011, BONY, Ocwen LS, and MERS filed their original answer. On October 11, 2011, BONY, Ocwen LS, and MERS filed their Original Counterclaim and Third-Party Petition, asserting claims for breach of contract, suit on a note, and equitable subrogation, and seeking a declaration permitting them to foreclose on the property. In their Third-Party

–2–

Petition, BONY, Ocwen LS, and MERS joined Linda Santiago as a third-party defendant as a borrower on the loan. The Santiagos then aligned themselves as co-plaintiffs when they filed their First Amended Petition on November 3, 2011. The case was removed to federal court, then remanded on August 13, 2012.

After remand, the Santiagos filed their operative Third Amended Original Petition. They added as defendants the appellees The Bank of New York Mellon Corporation (BONY Corp.), Ocwen Financial Corporation (Ocwen Financial), and a law firm and title company not parties to this appeal. In addition to their existing claims for fraud by nondisclosure, breach of contract, and to quiet title, the Santiagos asserted counterclaims for violations of the Texas Constitution and sought a declaration that appellees had forfeited all principal and interest on the loan. The Santiagos asserted additional claims for conspiracy to defraud, negligent misrepresentation, and statutory violations for filing a fraudulent lien. They also pleaded the affirmative defense of unclean hands. Citing section 16.069 of the Texas Civil Practice and Remedies Code, Linda Santiago alleged that her claims against appellees were timely.

Appellees filed traditional and no-evidence motions for summary judgment, which were granted by the trial court on March 22, 2013, and in an amended order signed on March 28, 2013. This appeal followed.

ISSUES

In five issues, the Santiagos challenge (1) the trial court's summary judgment in favor of Novastar, BONY, and BONY Corp. for violation of the Texas Constitution; (2) the summary judgment in favor of all appellees on the claim to quiet title; and (3) the summary judgment in favor of BONY and Ocwen LS concerning default and foreclosure.[2] In their first issue, the

---

[2] In their brief, the Santiagos explain that they do not challenge the summary judgment pertaining to their claims for fraud, breach of contract, or violations of the Texas Civil Practice and Remedies Code.

Santiagos contend they raised a fact issue concerning their claims for violation of the Texas Constitution and to quiet title to their property. In their second issue, the Santiagos contend the statute of limitations does not bar their claims. In their third issue, they argue that genuine issues of material fact exist regarding their constitutional claims, precluding summary judgment on appellees' claims for breach of contract and suit on a note. In their fourth issue, the Santiagos challenge the summary judgment for BONY and Ocwen LS on their claim for equitable subrogation. In their fifth issue, they contend fact issues exist regarding BONY's right to recover any relief associated with the loan.

### STANDARDS OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009) (no-evidence summary judgment standard of review); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standard of review).

A no-evidence motion for summary judgment under rule 166a(i) must challenge specific elements of the opponent's claim or defense on which the opponent will have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The opponent must then present summary judgment evidence raising a genuine issue of material fact to support the challenged elements. *Id.* In reviewing a no-evidence summary judgment motion, we "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). A genuine issue of

material fact exists if the nonmovant produces more than a scintilla of evidence supporting the existence of the challenged element. *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex. 2004).

A traditional motion for summary judgment must show there is no genuine issue as to a specified material fact and, therefore, the moving party is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). For a defendant to prevail on a traditional motion for summary judgment, he must either disprove at least one element of the plaintiff's claim as a matter of law, or conclusively establish all elements of an affirmative defense. *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 836 (Tex. App.—Dallas 2005, no pet.). If the movant meets his burden, then and only then must the nonmovant respond and present evidence raising a fact issue. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999). If a nonmovant relies on an affirmative defense to oppose the summary judgment motion, he must provide sufficient summary judgment evidence to create a fact issue on each element of the defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

Because the trial court's order granting summary judgment does not specify the basis for the ruling, we must affirm the trial court's judgment if any of the theories advanced are meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 610 (Tex. App.—Dallas 2006, no pet.).

**ANALYSIS**

Under Texas law, "no mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by" section 50 of Article XVI to the Texas Constitution. TEX. CONST. ANN. art. XVI, § 50(c). Section 50(a)(6) contains numerous requirements to which

a home equity loan such as the loan to the Santiagos must adhere. At issue here, section 50(a)(6)(Q)(iii) requires that the loan be made on the condition that "the owner of the homestead not sign any instrument in which blanks relating to substantive terms of agreement are left to be filled in." TEX. CONST. ANN. art. XVI, § 50(a)(6)(Q)(iii). Section 50(a)(6)(Q)(v) provides that at the time the loan is made, the owner of the homestead "shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit." *Id.* § 50(a)(6)(Q)(v). The Santiagos contend that both subsections (iii) and (v) were violated with respect to their loan. They argue that because of these violations, the loan was void, and appellees should forfeit all principal and interest.

### 1. Constitutional claims and claims to quiet title

In their first issue, the Santiagos contend that they raised a fact issue on two specific constitutional violations by appellees. First, the Santiagos contend that two instruments they signed at closing, a Certificate of Confirmation (Certificate) and an Election Not to Rescind (Election), contained blanks that were filled in after closing, in violation of subsection (iii) of section 50(a)(6)(Q). In his summary judgment affidavit, Luis Santiago testified that the copies of the Certificate and the Election he received in the course of this litigation bore a date of May 19, 2004, while the copies he received at closing did not bear a date. Instead, the copies he received had a blank for the date to be filled in.

The Certificate and the Election, however, were documents regarding the three-day period during which the Santiagos could rescind the loan without penalty, and should have remained blank until the three-day period had elapsed. *See id.* § 50(a)(6)(Q)(viii) (owner of homestead and spouse may rescind extension of credit without penalty within three days after extension of credit made). In fact, each document bore a warning in all-capital letters instructing

–6–

borrowers not to sign until three business days had elapsed from the closing.[3] We conclude that there was no violation of section 50(a)(6)(Q)(iii) regarding the blanks on the Certificate and on the Election at the time of closing.

Second, the Santiagos argue that they raised a fact issue that their signatures on the Affidavit were forged. As part of their summary judgment response, the Santiagos submitted the affidavit of a handwriting expert who testified that in her professional opinion, it was "more likely" that the Santiagos' signatures on the Affidavit "are not the genuine signatures of Luis A. Santiago or Linda A. Santiago." Luis Santiago testified in his summary judgment affidavit that he did not sign the Affidavit. He denied that the signature on the Affidavit was his genuine signature. Linda Santiago made the same denials in her summary judgment affidavit. The Santiagos argue that the Affidavit made the critical disclosure that they could be liable personally on the entire loan in the event of any fraud on their part.[4] They contend the Affidavit is incorporated into the note and security instrument that evidenced the loan and therefore was "related to the extension of credit" for purposes of subsection (v) of section 50(a)(6)(Q).

The Santiagos contend they gave proper notice to appellees of these deficiencies by service of their amended petition, and that appellees failed to cure the deficiencies within sixty days of notice. *See* TEX. CONST. ANN. art. XVI, § 50(a)(6)(Q)(x) (lender may correct failure to

---

[3] The Certificate provided: "NOTICE TO BORROWERS: YOU HAVE A LEGAL RIGHT UNDER FEDERAL LAW TO CANCEL THIS TRANSACTION PRIOR TO MIDNIGHT OF MAY 18, 2004. *YOU MUST NOT SIGN THIS FORM BEFORE MIDNIGHT OF MAY 18, 2004.*" This language appeared as the first of the two paragraphs that constituted the entire document, and was set off by empty space both before and after the notice. The Election provided, in bold type: "**[DO NOT SIGN THIS UNTIL AFTER THREE (3) DAYS HAVE ELAPSED SINCE YOU SIGNED YOUR OTHER LOAN DOCUMENTS. AT THE END OF THAT PERIOD, PLEASE SIGN AND FAX, COURIER, OR TAKE TO PLACE WHERE SETTLEMENT OCCURRED.]**" This warning appeared as one of three paragraphs, immediately above the signatures of the Santiagos, with space in between it and the preceding paragraph. The Santiagos were obligated to protect themselves by reading the documents they signed and are presumed as a matter of law to know the contract's terms. *Gray & Co. Realtors, Inc. v. Atl. Hous. Found.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.).

[4] In its motion for summary judgment, Novastar pointed out (and the summary judgment record reveals) that this specific disclosure was made in other loan documents that the Santiagos signed and received, and in any event, there is no argument by any party that there was fraud on the part of the Santiagos for which they should be held personally liable on the loan. For example, the "Owner's Affidavit of Compliance" signed and received by the Santiagos contains a paragraph in bold type and all-capital letters providing in part that the knowing misrepresentation of a material fact contained in the note, security instrument, or related documents may subject the owner to recourse for personal liability. In addition, neither of the Santiagos testified in their summary judgment affidavits that had this disclosure been made, they would not have entered into the transaction.

–7–

comply not later than 60th day after date of notice). They rely on our opinion in *Wells Fargo Bank, N.A. v. Leath*, 425 S.W.3d 525, 532 (Tex. App.—Dallas 2014, pet. filed), to argue that notice may be given under section 50(a)(6)(Q)(x) by allegations in a pleading. In *Leath*, we concluded that Leath's answer to the bank's application for foreclosure provided sufficient notice of a constitutional violation where the answer specifically stated that the loan violated the constitution by exceeding eighty percent of the value of the property. *Id.* Similarly, in his original petition, Luis Santiago alleged that the loan was governed by Article XVI, section 50 of the Texas Constitution and that he had not received a copy of the Affidavit.[5] He also alleged that his signature on the Affidavit was not genuine.

The Santiagos argue that they raised a fact issue precluding summary judgment on their request for a declaratory judgment that the home equity loan is void and that all principal and interest under it is forfeit. *See* TEX. CONST. ANN. art. XVI, § 50(a)(6)(Q)(x) (failure to cure violation means lender or holder of note shall forfeit all principal and interest of extension of credit). Assuming without deciding that the Santiagos raised a fact issue regarding an uncured violation of subsection (v) of section 50(a)(6)(Q), we address whether this claim is barred by limitations.[6]

### 2. Limitations

In their second issue, the Santiagos assert that their constitutional claims were timely asserted. They rely on the discovery rule and on section 16.069 of the Texas Civil Practice and Remedies Code. They contend that a fact issue exists concerning when they, in the exercise of

---

[5] Novastar argues on appeal that notice in a pleading is not sufficient under the terms of the security instrument signed by the Santiagos. This argument, however, was not presented to the trial court, and we may not consider it on appeal. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) (summary judgment cannot be affirmed on grounds not expressly set out in motion or response).

[6] The Santiagos rely on the same constitutional violations to support their claim to quiet title. They argue that they raised a fact issue on the validity of the lien, and therefore, summary judgment on their claim to quiet title was improper. Our discussion of limitations resolves this claim as well as the claim for declaratory judgment that the loan is void due to uncured constitutional violations. *See Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 618 (Tex. 2007) (when deed is voidable rather than void, equitable action to remove cloud on title is subject to limitations).

reasonable diligence, discovered their claims. Linda Santiago also asserts that her claims were revived under section 16.069 when appellees first filed their third-party action against her for foreclosure.[7]

The residual four-year statute of limitations applies to claims that a lender violated constitutional provisions governing home equity loans. *Williams v. Wachovia Mortg. Corp.*, 407 S.W.3d 391, 394–95 (Tex. App.—Dallas 2013, pet. denied) (applying residual limitations period to ex-spouse's claim that lender failed to obtain her consent before extending home equity loan); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (West 2008) (four-year statute applies to actions for which there is no express limitations period).

Appellees bore the burden on summary judgment to prove conclusively the elements of their limitations defense. *Williams*, 407 S.W.3d at 397–98. This includes conclusively proving when the cause of action accrued, as well as negating the discovery rule. *See Rhone-Poulenc, Inc.*, 997 S.W.2d at 223 (explaining summary judgment burden). A claim accrues "when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996). In *Rivera v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas 2008, no pet.), we concluded that a legal injury occurred when a lender made a loan in excess of the amount allowed by law. *See also Williams*, 407 S.W.3d at 398 (citing *Rivera*). Following our reasoning in *Rivera*, the Santiagos' legal injury occurred in May 2004, when their home equity loan was closed and no copy of the Affidavit was provided to them. *See id.*

---

[7] Although Luis Santiago initially argued in the appellants' brief that he relied on section 16.069 to raise defenses to appellees' counterclaims, the Santiagos concede in their reply brief that "only Ms. Santiago may rely on the revival provision contained in section 16.069 of the Texas Civil Practice and Remedies Code."

### a. Discovery rule

In neither *Rivera* nor *Williams* were we presented with the question whether the discovery rule could be applied to defer accrual of the borrower's cause of action for constitutional violations. *See Williams*, 407 S.W.3d at 398. Neither the Texas Supreme Court nor any of our sister courts have decided the question. There is federal court authority interpreting Texas law on the question, however. *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir.), *cert. denied*, -- U.S. --, 134 S. Ct. 196, 187 L. Ed. 2d 256 (2013). The *Priester* court applied the legal injury rule to the creation of unconstitutional liens, and concluded that the legal injury occurs at the creation of the lien. *Id.* at 675–76. The court also held that the discovery rule did not apply to defer accrual. *Id.*; *see also Moran v. Ocwen Loan Servicing, L.L.C.*, 560 F. App'x 277, 278–79 (5th Cir. 2014) (per curiam) (following *Priester*).

In *Priester*, the court reasoned that "[i]nsofar as the period of limitations exists to preserve evidence and create settled expectations, it would essentially be nullified by allowing parties to wait many years to demand cure." *Priester*, 708 F.3d at 675–76. The legal injury "occurred when the Priesters created the lien, and there was nothing that made the injury undiscoverable." *Id.* at 676. The court concluded that "[t]his is not one of the 'rare' instances in which the discovery rule applies–the injury is certain to be 'discovered within the prescribed limitations period.'" *Id.* Similarly, the court also rejected any tolling of the statute of limitations by fraudulent concealment. The constitutional violations alleged were the signing of documents in the Priesters' own home and the failure to provide constitutional notices, neither of which was concealed by the defendants. *Id.* at 677. The court also concluded, "[t]o the extent that a constitutional claim under Section 50(a)(6) renders a lien voidable rather than void, once a period of limitations has passed, the lien is no longer voidable and is valid." *Id.* at 678. In

–10–

*Williams*, we relied on *Priester* to support our conclusion that liens created in violation of section 50(a)(6) were voidable rather than void. *See Williams*, 407 S.W.3d at 396–97.

The Santiagos assert that the discovery rule applies and they did not discover the existence of the allegedly forged Affidavit until 2010. For the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the evidence of the injury must be objectively verifiable. *See Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

In *S.V.*, the court explained the "inherently undiscoverable" requirement. *See S.V.*, 933 S.W.2d at 7. An injury need not be "absolutely impossible to discover," or "suit would never be filed and the question whether to apply the discovery rule would never arise." *Id.* But "inherently undiscoverable" does not mean "merely that a particular plaintiff did not discover his injury within the prescribed period of limitations." *Id.* "[D]iscovery of a particular injury is dependent not solely on the nature of the injury but on the circumstances in which it occurred and the plaintiff's diligence as well." *Id.* An injury is "inherently undiscoverable" if "it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* We determine whether an injury is inherently undiscoverable on a categorical, not case-by-case, basis. *Shell Oil v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011).

The nature of the injury alleged by the Santiagos is that they did not receive a copy of the Affidavit as required by subsection (v) of Article XVI, section 50(a)(6)(Q) of the Texas Constitution, and therefore were unaware that they could be liable personally on the entire loan in the event of any fraud on their part. They allege that a copy of the Affidavit was not provided to them, and instead was filed of record bearing forgeries of their signatures. They argue that no diligence was required of them to discover their injury because they had no reason or obligation to search the deed records after their loan was closed.

–11–

There is no dispute that the allegedly forged Affidavit was a matter of public record upon its filing on May 25, 2004, or that the alleged constitutional violation was apparent from a review of those records. Luis Santiago discovered the alleged violation when he reviewed the records in 2010. In some circumstances, a party may have constructive notice of matters filed in the public record. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) (discussing when irrebuttable presumption of notice arises from public records). Even when a party does not have constructive notice of matters filed in the public record, however, "a cause of action for failure to provide that information is not inherently undiscoverable." *Id.* In *HECI* and subsequent cases involving owners of royalty interests, the courts also noted the royalty owners' obligation to exercise due diligence to protect their interests. *See id.* at 886; *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 736 (Tex. 2001).

The Santiagos rely on several cases rejecting application of constructive notice in cases of fraud. In *Ojeda de Toca v. Wise*, 748 S.W.2d 449, 451 (Tex. 1988), the court held that constructive notice under the real property recording statute[8] was not a defense to claims for fraud and violations of the DTPA. *Id.* ("Texas courts have never held that a purchaser's failure to search the deed records would bar his fraud action against the seller"). In *Lightfoot v. Weissgarber*, 763 S.W.2d 624, 617 (Tex. App.—San Antonio 1989, writ denied), the court applied the discovery rule to the plaintiff's cause of action for fraud, and relied on *Ojeda de Toca* in concluding that it "was not incumbent on the plaintiffs in this case to search the title records." In cases of fraud, however, the discovery rule applies without determination of whether the injury was "inherently undiscoverable." In *S.V.*, the court explained that in cases involving allegations of fraud, accrual of a cause of action is deferred "because a person cannot be

___

[8] Section 13.002 of the Texas Property Code provides in part that "[a]n instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument . . . ." TEX. PROP. CODE ANN. § 13.002 (West 2004).

permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run." *S.V.*, 933 S.W.2d at 6. The discovery rule applies to defer accrual of a cause of action in a second type of case, if the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified. *Id.*; *see also Wagner & Brown, Ltd.*, 58 S.W.3d at 736 (fact that lessee allegedly misrepresented information in particular case "may be relevant to the equitable principles involved in a fraudulent concealment analysis, but it does not affect the categorical determination of inherent undiscoverability in a discovery rule analysis").

In *Kramer v. JP Morgan Chase Bank, N.A.*, No. 13-50920, 2014 WL 2872905, at *4 (5th Cir. June 25, 2014) (per curiam),[9] the court determined the discovery rule did not apply to Kramer's claim that her signature was forged on a deed of trust and other documents relating to a home equity line of credit extended to her then-spouse. Among other claims, Kramer alleged the lender violated two constitutional provisions under Article XVI section 50(a)(6) of the Texas Constitution. First, she alleged that because her signatures on the loan documents were forged, the lien was not created with her consent, in violation of section 50(a)(6)(Q)(xi). Second, she alleged that the loan was not closed at the office of the lender, a title company, or an attorney, in violation of section 50(a)(6)(N). *Id.* at *1. In response to the bank's motion for summary judgment, Kramer presented expert testimony that her signature was forged. The record reflected that the loan was closed in 2005; Kramer discovered the existence of the loan and the lien in 2008 when she was considering a sale of the home; and she filed suit in 2012. *Id.* The trial court granted summary judgment on the basis of limitations, relying on the residual statute of limitations and declining to apply the discovery rule. *See id.* at *2, 3.

---

[9] Although the opinion in *Kramer* is not designated for publication, the Fifth Circuit's application of Texas law to similar facts is useful in our analysis. *See* FED. R. APP. P. 32.1(a) (permitting citation to unpublished judicial decisions).

Relying on *Priester*, the court of appeals affirmed the trial court's judgment. *Id.* at \*4. The court first explained that "*Priester* very clearly forecloses any argument that the statute of limitations does not apply and that the discovery rule of accrual should apply to Kramer's Section 50(a)(6)(N) claim," because the *Priester* court declined to apply the discovery rule to a claim under the same section. *Id.* As to the alleged violation of section 50(a)(6)(Q)(xi), the court explained, "Kramer's injury—the execution of a home equity loan without the consent of an owner's spouse—is not 'inherently undiscoverable.'" *Id.* (citing *S.V.*, 933 S.W.2d at 7, for proposition that under Texas law, injury is inherently undiscoverable "if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence"). Because due diligence "could have uncovered the violation of which Kramer complains," the discovery rule did not apply. *Id.* The court also noted that Kramer did discover the injury prior to the expiration of the statute of limitations. *Id.*

The Santiagos argue that "[w]hen a plaintiff knew or should have known of an injury generally is a question of fact," citing *Houston Endowment, Inc. v. Atlantic Richfield Co.*, 972 S.W.2d 156, 160 (Tex. App.—Houston [14th Dist.] 1998, no pet.). This question, however, arises in the application of the discovery rule to determine when a cause of action accrued, not the initial determination whether the discovery rule applies to the category of injury alleged. *See id.* (where injury was inherently undiscoverable, discovery rule applied, and tolled statute of limitations until appellants knew or should have known of injury). As we have noted, the question whether an injury is inherently undiscoverable is made on a categorical basis by the court. *Shell Oil Co.*, 356 S.W.3d at 930.

We conclude the Santiagos' injury was not "by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *See S.V.*, 933 S.W.2d at 7. The Affidavit was a matter of public record. Here, as in *Kramer*, due diligence could have uncovered

the violation of which the Santiagos complain. *See Kramer*, 2014 WL 2872905, at \*4. Luis Santiago did discover it when he reviewed the public records relating to the loan. As the Santiagos themselves point out, the Affidavit was specifically referenced in the security instrument and other documents they signed at closing.[10] Although as the Santiagos argue, they may not have had any "obligation to perform periodic random searches of recorded instruments associated with their property," they did have an obligation "to protect themselves by reading what they sign" and disclosing any discrepancies to the lender. *See Gray & Co. Realtors, Inc. v. Atl. Hous. Found., Inc.*, 228 S.W.3d 431, 436 (Tex. App.—Dallas 2007, no pet.). They could have confirmed through a single review of the public records of their loan whether they had received copies of all of the recorded documents associated with the loan, a much more limited task than "periodic random searches," and one that they eventually undertook. Their injury was discoverable.

As in *Priester*, the legal injury "occurred when the [Santiagos] created the lien, and there was nothing that made the injury undiscoverable." *Priester*, 708 F.3d at 676. Although the Santiagos assert there was fraud in connection with the alleged forgery, there was no evidence of concealment of the allegedly forged document, which was undisputedly a matter of public record immediately after the closing.[11] We conclude the discovery rule does not apply, and the Santiagos' claims arising from the alleged constitutional violations are barred by the four-year statute of limitations.

---

[10] The Santiagos made this argument in response to appellees' contention that they were not required to provide the Santiagos a copy of the Affidavit because it was not essential to the extension of credit. *See* TEX. CONST. ANN. art. XVI, § 50(a)(6)(Q)(v) (at time of extension of credit, owner of homestead shall receive a copy of final loan application and all executed documents signed by owner at closing related to extension of credit).

[11] In their argument regarding equitable subrogation, the Santiagos contend that "concealment of the Affidavit has left them on the hook for a loan they would not otherwise have consummated." In support of this argument, they cite to allegations in their operative petition that they would not have entered into the transaction at all had they known of the forgery of the Affidavit. They then contend that appellees did not introduce evidence to overcome these allegations. But allegations in a petition are not summary judgment evidence. *See City of Houston*, 589 S.W.2d at 678 (pleadings do not constitute summary judgment proof). And as noted, the particular disclosure regarding potential personal liability imposed on the borrower for fraud was made in other documents the Santiagos received, and in any event, a borrower's fraud is not an issue in this case.

–15–

### b. Section 16.069

If a counterclaim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitations on the date the party's answer is required. TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (West 2008). Here, Luis Santiago was the original plaintiff. On May 16, 2011, he filed his original petition, asserting claims against appellees for fraud by nondisclosure (arising from the constitutional violations he alleged in the home equity loan); breach of contract arising from the May 14, 2004, home equity loan; and to quiet title. On October 11, 2011, defendants filed their original counterclaim against Luis Santiago and original third-party petition against Linda A. Santiago, alleging claims for breach of contract, suit on a note, and equitable subrogation. In the Santiagos' first amended original petition and response to defendants' counterclaim, Linda Santiago is identified as a plaintiff, and the pleading includes an allegation relying on section 16.069. The pleading also contains counterclaims for violations of Article XVI, section 50(a)(6), the federal Truth in Lending Act (15 U.S.C. § 1641), and unclean hands.

The Santiagos argue that their claims are timely asserted under section 16.069 of the Texas Civil Practice and Remedies Code. Section 16.069(a) provides:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069(a) (West 2008).

We note that as to appellee Novastar, there is no issue regarding section 16.069 because Novastar neither joined in the filing of the third-party petition against Linda Santiago nor asserted any claim against her. Section 16.069, therefore, does not support revival of any claim

against Novastar, and the trial court properly granted Novastar's motion for summary judgment that the Santiagos' claims against it for violations of the Texas Constitution and to quiet title were barred by limitations.

Appellees BONY, Ocwen LS, and MERS asserted a third-party action against Linda Santiago. Linda Santiago responded by realigning herself as plaintiff and filing, with Luis Santiago, a First Amended Original Petition and Response to Defendants' Counterclaim, in which both plaintiffs alleged not only the three causes of action asserted in Luis Santiago's original petition, but also counterclaims for the same constitutional violations that were the factual basis for Luis Santiago's original claims.

Under our analysis of the statute of limitations, Linda Santiago's claims against appellees were stale at the time she asserted them, as were Luis Santiago's. The Santiagos therefore assert that they may rely on section 16.069 to revive Linda's claims. They argue that Linda's claims are revived because she did not assert them until she was made a third-party defendant, and only then asserted them as counterclaims.

Neither the Santiagos nor appellees have cited authority considering whether a third-party defendant who realigns herself as a plaintiff and joins in asserting the original plaintiff's claims may nonetheless rely on section 16.069 to revive claims that could not have been brought in the first instance had she joined her spouse as an original plaintiff. We conclude she cannot.

In *Hobbs Trailers v. J.T. Arnett Grain Co.,* 560 S.W.2d 85, 88–89 (Tex. 1977), the court discussed application of section 16.069's predecessor statute. The court explained that "[t]he statute was intended to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitation before asserting his own claim." *Id.* In *Hobbs Trailers*, Arnett Grain was the original plaintiff; Hobbs Trailers was the original defendant; and the claim at issue was for setoff of amounts a jury found Arnett Grain had been

–17–

damaged by defective refrigeration equipment installed by Hobbs on trailers leased by Arnett. *See id.* at 87–89. At the time Arnett Grain sued Hobbs, Arnett Grain's breach of warranty claims for the defective refrigeration equipment were already barred by limitations. *Id.* at 88. After "extensive pleadings," however, the trial court "cast Hobbs as plaintiff and Arnett Grain as defendant." *Id.* at 86. Arnett Grain then argued that because it was now cast as defendant, it could assert its offset claim defensively as a counterclaim revived by the predecessor of section 16.069. *Id.* at 88. The supreme court rejected this argument, reasoning that Arnett Grain's claim for breach of warranty for the defective equipment was an independent cause of action "at first so asserted," to which the plea of limitations was valid. *Id.* Where Arnett Grain was not the original defendant, it could not rely on section 16.069's predecessor to revive its claim. *Id.* The court explained, "[w]e do not believe the legislature intended to force an original defendant to choose between asserting a valid bar by limitation and asserting a valid counterclaim, for fear that upon interchange of the parties the original claim would become a 'counterclaim' and thus be saved by [section 16.069]." *Id.* The statute could not be applied "to the situation in which the original plaintiff becomes the nominal defendant." *Id.* at 89. Because the claim was originally asserted "as other than a counterclaim or crossclaim," it was barred by limitations. *Id.*

We considered the application of section 16.069 in *ECC Parkway Joint Venture v. Baldwin*, 765 S.W.2d 504, 513 (Tex. App.—Dallas 1989, writ denied). ECC was the plaintiff and Baldwin was the defendant in a suit for failure to disclose a deed restriction in a sale of real property. *See id.* at 506. Baldwin (the seller of the property) asserted a third-party claim against Duvall-Giles Co. (a broker involved in the transaction) for contribution and indemnity. *Id.* at 513. Duvall-Giles in turn "filed a cross-claim[12] against ECC for a declaratory judgment to

---

[12] It is not entirely clear from the procedural history given in the opinion why a third-party defendant's claim against the plaintiff would be referred to as a "cross-claim," which is defined in the rules of civil procedure as "any claim by one party against a co-party arising out of the

recover its attorney's fees from ECC in the event Baldwin recovered its own attorney['s] fees from ECC." *Id.* (footnote added). In response ECC filed a counterclaim against Duvall-Giles, asserting claims similar to those it had already asserted against Baldwin, including fraud and negligent misrepresentation. We explained that "ECC did not sue Duvall-Giles before all its claims against Duvall-Giles were barred by limitations." *Id.* Nevertheless, we concluded that section 16.069 applied to revive ECC's claims against Duvall-Giles. *Id.* We affirmed the trial court's denial of Duvall-Giles's motion to strike ECC's counterclaim as barred by limitations. *Id.* Citing *Hobbs Trailers* for the proposition that "the purpose of section 16.069 is to preclude a claimant from waiting to file his claim until after his would-be-adversary's own claim is barred by limitations," we noted that "we see no reason why that purpose is not served by allowing ECC's counterclaim instead of disallowing it." *Id.* (citing *Hobbs Trailers*, 560 S.W.2d at 88–89).

Neither *Hobbs Trailers* nor *Baldwin* presents precisely the same series of counter- and cross claims as the parties asserted here. In *Hobbs Trailers*, the only plaintiff was recast as the defendant, and the only defendant was recast as the plaintiff. *Hobbs Trailers*, 560 S.W.2d at 87–89. Here, a third-party defendant was realigned as an additional plaintiff. And as the court in *Hobbs Trailers* noted, the claim in question was not originally asserted as a cross- or counterclaim, while Linda Santiago's claims were asserted in response to appellees' third-party action against her. *See id.* at 89. In *Baldwin*, there was no realignment of parties. A third-party defendant's claim against the plaintiff revived the plaintiff's claims against the third-party defendant. *See Baldwin*, 765 S.W.2d at 513. Here, the third-party defendant attempts to revive

subject matter of either the original action or a counterclaim therein." TEX. R. CIV. P. 97(e). In any event, the opinion explains clearly the sequence and substance of the claims pertinent to our discussion here.

her own claims against the original defendants/third-party plaintiffs and assert them as a co-plaintiff with her spouse.

Despite the distinctions we have noted, we conclude that the rationale of *Hobbs Trailers* offers the most guidance here. The court explained that the legislature did not intend to force original defendants (here the appellees) to choose between asserting a valid bar by limitations and asserting a valid counterclaim "for fear that upon interchange of the parties the original claim would become a 'counterclaim' and thus be saved by [section 16.069]." *Hobbs Trailers*, 560 S.W.2d at 89. Allowing revival of the Santiagos' stale claims here would impose this choice on appellees. And the purpose of section 16.069, "to prevent a plaintiff from waiting until an adversary's valid claim arising from the same transaction was barred by limitation before asserting his own claim," is not affected here, where appellees had no claim to assert before the Santiagos' default in 2010. *See id.* at 88–89.

The Santiagos attempt to distinguish *Hobbs Trailers* by arguing that their constitutional claims are defensive only. The federal courts considering this argument after *Priester* have rejected it. *Moran*, 560 F. App'x at 279 (rejecting argument that declaratory-judgment action was "defense" to foreclosure and as such not constrained by statute of limitations); *see also Ausmus v. Deutsche Bank Trust Co. Nat'l Ass'n*, Civil Action No. 3:13-CV-148, 2013 WL 3938515, at *3 (S.D. Tex. July 29, 2013) (mem. op.); *and Sigaran v. U.S. Bank Nat'l Ass'n*, No. H-12-3588, 2013 WL 2368336, at *8 (S.D. Tex. May 29, 2013), *aff'd*, 560 Fed. App'x 410 (5th Cir. 2014) (per curiam) (both rejecting contention that constitutional claims were not barred because limitation statutes do not apply to defenses). In *Ausmus*, the court explained, "the argument that a violation of Section 50(a)(6) can serve as a defense to foreclosure rests on the view that an unconstitutional home equity loan is void. . . . *Priester* rejected that position,

concluding that such a loan is merely voidable, and that the effort to invalidate it must be made within the four-year limitations" period. *Ausmus*, 2013 WL 3938515, at *3.

We conclude that neither the discovery rule nor section 16.069 applies to the Santiagos' claims, and that the trial court properly granted appellees' motion for summary judgment on limitations grounds. We overrule the Santiagos' first and second issues.

### 3. Preclusion of appellees' claims

In their third issue, the Santiagos rely on their constitutional claims to argue that summary judgment was not proper on appellees' counterclaims for breach of contract and suit on a note. They contend that because they raised a fact issue regarding whether the loan was void as a result of constitutional violations, summary judgment for appellees was not warranted. Our discussion of the Santiagos' first two issues resolves this issue as well. Because the loan was not void, *see Williams*, 407 S.W.3d at 396–97, and because appellees established that summary judgment was proper on their counterclaims, we overrule the Santiagos' third issue.

### 4. Equitable subrogation

In their fourth issue, the Santiagos argue that BONY and Ocwen LS were not entitled to summary judgment on their claim for equitable subrogation. In their counterclaim, BONY and Ocwen LS alleged in the alternative that even if they could not recover for breach of contract and suit on the note, they were entitled under the equitable subrogation doctrine to recover the amount they expended to discharge the Santiagos' original mortgage lien. *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 620 (Tex. 2007) (per curiam) (constitutional provisions governing home equity loans did not abrogate lenders' equitable subrogation rights under common law). Because we have concluded that summary judgment was proper on appellees' counterclaims for breach of contract, suit on a note, and application to foreclose, we need not resolve this issue.

### 5. Ownership of note

The home equity loan to the Santiagos was evidenced by a Texas Home Equity Note (the Note). In their fifth issue, the Santiagos contend that BONY was not entitled to summary judgment on its claims for breach of contract and suit on the Note because it did not establish that it owned the Note. The Santiagos point to summary judgment evidence that appellee Novastar, the original lender on the Note, transferred its right, title, and interest in the Note to Novastar Mortgage Funding Corporation (Novastar Mortgage) on June 16, 2004. The Santiagos' expert witness, Lane Houk, testified that his review of documents filed with the SEC confirmed that Novastar Mortgage purchased the loan in 2004. BONY, however, relies on a 2009 transfer of lien and indorsement of the Note from Novastar, not Novastar Mortgage. Because Novastar had transferred any rights it had in the Note to Novastar Mortgage in 2004, the Santiagos argue, Novastar had nothing to transfer in 2009 to BONY. The Santiagos conclude that in light of this "unexplained gap in the chain of title," there is a fact issue regarding BONY's standing to pursue foreclosure.

BONY offered summary judgment evidence that it was the owner and holder of the Note. Howard R. Handville, Loan Analyst of Ocwen LS, testified by affidavit that Ocwen LS is the attorney-in-fact and servicer-in-fact for BONY. He testified about his job duties and his research and review of the documents relevant to the Santiagos' home equity loan. As custodian of records for Ocwen, he attached to his affidavit true and correct copies of the Note[13] as well as the Texas Home Equity Security Instrument (First Lien) (the Security Instrument), and several other pertinent documents including the 2009 transfer of lien to BONY. Handville testified that Novastar was the original lender on the Note, and that the "Security Instrument was granted in

---

[13] In addition, appellees' brief recites that the original note was filed by BONY and Ocwen "with the District Clerk in this cause pursuant to a motion requesting that relief filed by the Santiagos."

favor of MERS, solely as nominee for Novastar, its successors and assigns." He also testified that the Note and Security Instrument "were subsequently transferred to BONY." The copy of the Note attached to Handville's affidavit bears a special indorsement to BONY. Handville testified that the Santiagos "signed and entered" the Note; had not made payments on the Note since July 23, 2010; and were in default.

Both the Santiagos and BONY rely on *Salas v. LNV Corp.*, 409 S.W.3d 209 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The Santiagos rely on *Salas* for the proposition that they have standing to challenge BONY's right to collect on the Note through foreclosure. *See id.* at 216 (homeowners had standing to challenge LNV's right to foreclose). BONY relies on *Salas* for the proposition that a holder of a home equity note has standing to pursue foreclosure of the real property securing the debt. *See id.* at 220 (LNV established its right to foreclose as matter of law). In *Salas*, the court concluded there was no genuine issue of material fact regarding LNV's right to foreclose in light of its evidence that it was the current owner and holder of the note as well as the beneficiary entitled to foreclose under the deed of trust. *Id.*

We considered similar issues in *Henning v. OneWest Bank FSB*, 405 S.W.3d 950, 957–58 (Tex. App.—Dallas 2013, no pet.). In *Henning*, we stated that "'[t]o recover for a debt due and owing under a promissory note, a party must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing.'" *Id.* at 958 (quoting *Austin v. Countrywide Homes Loans*, 261 S.W.3d 68, 72 (Tex. App.—Houston [1st Dist.] 2008, pet. denied)). We also noted that when a mortgage note is transferred, the mortgage or deed of trust is also automatically transferred to the note holder by virtue of the common-law rule that "the mortgage follows the note." *Id.* (citing *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *4 (Tex. App.—Austin, May 18, 2012, pet. denied) (mem. op.)). We concluded that there was no genuine issue of

material fact regarding the "chain of title" to the note in light of OneWest's evidence that it was in possession of the original note, indorsed in blank. *See id.* at 958–59.

Here, the Note was specially indorsed to BONY. Under section 3.205(a) of the Texas Business and Commerce Code, a specially indorsed instrument "becomes payable to the identified person and may be negotiated only by the indorsement of that person." TEX. BUS. & COM. CODE ANN. § 3.205(a) (West 2002). The "holder" of an instrument is entitled to enforce an instrument. *Id.* § 3.301. A "holder" is defined in section 1.201(21)(A) as "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id.* § 1.201(21)(A). Section 3.301 also provides that "[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument." *Id.*; *see also Manley v. Wachovia Small Bus. Capital*, 349 S.W.3d 233, 240 (Tex. App.—Dallas 2011, pet. denied) (even if person is not holder of note, he may prove he is owner and entitled to enforce note). The Santiagos argue that because the Note is not indorsed from Novastar to Novastar Mortgage, BONY never became a "holder," citing *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.), for the proposition that a transferee acquires only whatever rights the transferor had in the note and does not become the holder. In *Leavings*, however, the note in question, consisting of a retail installment contract and completion certificate, was not negotiable. *Id.* at 311. Therefore, the appellee could not be a holder. *Id.*; *see also Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 254 (5th Cir. 2013) (distinguishing *Leavings* and concluding assignee of mortgage could foreclose as rightful holder).

We conclude that in light of BONY's proffered summary judgment evidence, there was no genuine issue of material fact regarding BONY's right to enforce the Note. We overrule the Santiagos' fifth issue.

**CONCLUSION**

We overrule the Santiagos' five issues and affirm the trial court's judgment.

/Martin Richter/
MARTIN RICHTER
JUSTICE, ASSIGNED

130619F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

LUIS A. AND LINDA A. SANTIAGO,
Appellants

No. 05-13-00619-CV      V.

NOVASTAR MORTGAGE, INC., THE
BANK OF NEW YORK MELLON, AS
TRUSTEE FOR THE REGISTERED
HOLDERS OF NOVASTAR MORTGAGE
FUNDING TRUST SERIES 2004-2
EQUITY LOAN ASSET-BACKED
CERTIFICATES 2004, OCWEN LOAN
SERVICING, LLC, MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., OCWEN FINANCIAL
CORPORATION, AND THE BANK OF
NEW YORK MELLON CORPORATION,
Appellees

On Appeal from the 296th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 296-02073-2011.
Opinion delivered by Justice Richter,
Chief Justice Wright and Justice Bridges
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellees Novastar Mortgage, Inc., The Bank Of New York
Mellon, as Trustee for the Registered Holders of Novastar Mortgage Funding Trust Series
2004-2 Equity Loan Asset-Backed Certificates 2004, Ocwen Loan Servicing, LLC, Mortgage
Electronic Registration Systems, Inc., Ocwen Financial Corporation, and the Bank of New York
Mellon Corporation recover their costs of this appeal from appellants Luis A. and Linda A.
Santiago.

Judgment entered this 28th day of August, 2014.