# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00304-CV

**Mikael Judah and Laura Judah, Appellants**

**v.**

**EMC Mortgage Corporation, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-11-003275, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Mikael and Laura Judah have appealed a final take-nothing summary judgment on claims they asserted in opposition to foreclosure of real property they presently own. We will affirm the judgment.

## BACKGROUND

The parties concur regarding the basic circumstances from which this appeal arose. In 2007, the Judahs purchased real property located at 15408 Honeycomb Hollow in Leander, Texas, financing the transaction with a loan of $204,000 from AmericaHomeKey, Inc. (AHK). In connection with the loan, the Judahs and AHK executed a promissory note and secured the note with a deed of trust. Beginning in 2009, the Judahs ceased to make payments on the note.

In the meantime, AHK had executed an assignment of its rights in both the note and deed of trust to another financial institution, Wells Fargo Bank, N.A., as trustee for the

Certificateholders of Structured Asset Mortgage Investments II Inc. Bear Stearns Mortgage Funding Trust 2007-AR4 Mortgage Pass-Through Certificates, Series 2007-AR4 (Wells Fargo). Wells Fargo, through its mortgage servicer, accelerated maturity of the debt and noticed a foreclosure sale for November 1, 2011. The Judahs responded by suing the mortgage servicer, JPMorgan Chase Bank, N.A. (incorrectly named as "EMC Mortgage Corporation"[1]) (JPMC), seeking injunctive relief to bar the sale. While the Judahs' specific arguments have evolved somewhat over the course of the litigation, the crux of their position has been that JPMC lacks authority to foreclose because there was no valid assignment of AHK's rights in the note or deed of trust to Wells Fargo.

The Judahs succeeded in obtaining a temporary injunction to bar the foreclosure sale,[2] and their claims were thereafter presented for final resolution on cross-motions for summary judgment. In its motion, JPMC sought to establish its authority to foreclose as a matter of law through proof that it was in possession of the original note that, further, had been endorsed specifically to Wells Fargo.[3] This proof included an affidavit from a JPMC attorney, Lauren Godfrey, accompanied by what Godfrey averred was a true and correct copy of the original note the Judahs had executed with AHK in 2007 and that Godfrey indicated she was holding in trust for JPMC as Wells Fargo's mortgage servicer. This instrument reflects that the Judahs had

---

[1] JPMC is the successor servicer to EMC Mortgage LLC, which was formerly known as "EMC Mortgage Corporation," the name used in the case caption. There appears to be no dispute that JPMC is the real party in interest.

[2] Although the Hon. John Wisser ultimately signed the final judgment, the temporary injunction order was signed by the Hon. Gisela Triana.

[3] In addition to this "traditional" summary-judgment ground, JPMC asserted both traditional and no-evidence grounds targeting several other claims and theories that the Judahs had pled. These additional claims and grounds are not at issue on appeal.

promised to repay their $204,000 loan, plus interest at a variable rate, to AHK or any subsequent "Note Holder" (defined to include "anyone who takes this Note by transfer and who is entitled to receive payments under this Note").[4]  At the end of the document appear the Judahs' signatures as "Borrowers,"[5] the signature of an AHK officer, and the stamped indorsement to Wells Fargo, as follows:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
MIKAEL A. JUDAH                -Borrower

_____ (Seal)
LAURA K. JUDAH                -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

[Sign Original Only]

Pay to the order of:  Wells Fargo Bank, N.A., as trustee

_____
Without Recourse
AMERICAHOMEKEY, INC., a TEXAS Corporation

By:_____
Fritz Caughron, Exec. Vice President

In addition to this evidence, and while insisting that it had no need to do so, JPMC also attempted to prove the chain of assignment of both the note and deed of trust from AHK

_____

[4]  Similarly, the Judahs expressly acknowledged in the note that AHK "may transfer this Note" and that their payment obligations were owed to whoever the "Note Holder" might be.

[5]  That these were indeed the Judahs' signatures was confirmed by the Judahs' discovery responses, also attached to JPMC's motion.  JPMC similarly established the validity of the Judahs' signatures on the deed of trust, discussed shortly.

to Wells Fargo.[6] It presented a certified copy of the deed of trust between the Judahs and AHK, which had been recorded in the Travis County real property records. Similar to the note, the deed of trust defines the "Lender" to include AHK and "any holder of the Note who is entitled to receive payments under the Note." The deed of trust also identifies Mortgage Electronic Registration Systems (MERS), "solely as nominee for Lender and Lender's successors and assigns," and the successors and assigns of MERS, as "beneficiary."[7] Along with the deed of trust, JPMC presented a certified copy of a document titled "Assignment of Note and Deed of Trust," which had also been recorded in the Travis County real property records. The document recites that on November 10, 2009, MERS, "solely as nominee for [AHK], its successors and assigns," assigned both the note and the deed of trust to Wells Fargo.[8]

In their summary-judgment motion, the Judahs attempted to negate JPMC's authority to foreclose as a matter of law based on two grounds of relevance to this appeal. First, the Judahs urged that the deed of trust could not be validly assigned to Wells Fargo independently from the underlying note, a proposition that JPMC had assumed in its summary-judgment motion,

---

[6] In this regard, JPMC cited *Kiggundu v. Mortgage Electronic Registration Systems Inc.*, 469 Fed. Appx. 330, 331–32 (5th Cir. 2012) (per curiam) (where financial institution proved that it possessed note, endorsed in blank, "it was not required to show that the deed of trust had been assigned to it" in order to establish its right to foreclose; arguments attacking validity of assignment of deed of trust were thus "beside the point").

[7] "The MERS system is 'an electronic mortgage registration system and clearinghouse that tracks beneficial ownerships in, and servicing rights to, mortgage loans.'" *Bierwirth v. BAC Home Loans Servicing, L.P.*, No. 03-11-00644-CV, 2012 WL 3793190, at *1 n.2 (Tex. App.—Austin Aug. 30, 2012, pet. denied) (mem. op.) (quoting *In re Mortgage Elec. Registration Sys. (MERS) Litig.*, 659 F. Supp. 2d 1368, 1370 (J.P.M.L. 2009)).

[8] Similarly included in JPMC's summary-judgment evidence is a certified copy of a recorded January 2013 "Corrective Assignment of Deed of Trust" that fixed a misspelling in the earlier version.

4

as previously noted. Second, the Judahs insisted that the purported assignment of the note to Wells Fargo was void because the transfer, at least according to the 2009 date reflected on the recorded assignment, had occurred after the "closing date" of the trust and could not be legally accepted by Wells Fargo per IRS regulations and New York trust law.[9]

Following a hearing, the district court granted JPMC's motion, denied the Judahs' motion, and rendered final judgment that the Judahs take nothing. The Judahs then perfected this appeal from that judgment.[10]

## ANALYSIS

On appeal, the Judahs principally reurge their summary-judgment ground attacking the validity of the assignment of the note to Wells Fargo (and, in turn, JPMC's authority to foreclose) based on the timing of the assignment. In addition to disputing the Judahs' view of the law governing the effect of the assignment, JPMC argues (as it did below) that the timing issue is ultimately of no moment in the face of its uncontroverted proof that it possesses the original note and that the note had been indorsed to Wells Fargo. We agree.

---

[9] In their motion, the Judahs also advanced grounds attacking the authority of MERS to assign the note or the deed of trust on AHK's behalf. They have not reurged these grounds on appeal, however.

[10] To be precise, the Judahs' notice of appeal complains only of the portion of the judgment granting JPMC's summary-judgment motion; it does not mention the ruling denying their own motion. However, in their appellate briefing, the Judahs alternatively pray both for reversal and remand (the appropriate remedy if they are attacking only the ruling granting JPMC's motion) *and* reversal and rendition of judgment in their favor (which they could obtain only by appealing the denial of their own motion). Because we conclude that the district court properly granted JPMC's motion, we need not determine whether the Judahs have preserved any claim to rendition of judgment in their favor.

5

The Judahs' note is a negotiable instrument, governed by chapter 3 of the Texas Business and Commerce Code.[11] Under the Code, "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession" is the "holder" of the instrument.[12] Consequently, JPMC's evidence that it possessed the original note on behalf of Wells Fargo and that the note had been indorsed specifically to Wells Fargo would establish that JPMC is the holder of the note. In turn, per both chapter 3 and the terms of the Judahs' note and deed of trust, JPMC is entitled to enforce the instrument.[13]

On appeal, however, the Judahs insist that the summary-judgment record presents a fact issue as to whether JPMC or Wells Fargo "manufactured evidence" that the original note is in JPMC's possession and has been indorsed to Wells Fargo. As support for that rather bold accusation, the Judahs refer us to copies of two iterations of the note's signature page that can be found in the clerk's record. One copy, which they term "Version 2," is identical to the signature

---

[11] *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 797 (Tex. 1992) (interpreting when writing is negotiable instrument under former section 3.106 of the Business & Commerce Code); *Cadle Co. v. Regency Homes, Inc.*, 21 S.W.3d 670, 678–79 (Tex. App.—Austin 2000, pet. denied) (noting legislature has codified rationale of *Amberboy*); *see also* Tex. Bus. & Com. Code § 3.112(b) ("Interest may be stated in an instrument . . . as a fixed or variable rate or rates.").

[12] Tex. Bus. & Com. Code § 1.201(b)(21)(A).

[13] *Id.* § 3.301; *see, e.g.*, *Trevarthen v. New Century Mortg. Corp.*, No. 03-12-00790-CV, 2014 WL 5801878, at *5 (Tex. App.—Austin Nov. 6, 2014, no pet.) (mem. op.); *Santiago v. Novastar Mortg., Inc.*, 443 S.W.3d 462, 478–79 (Tex. App.—Dallas 2014, pet. denied); *Kiggundu*, 469 Fed. Appx. at 332; *Calderon v. Bank of Am. N.A.*, 941 F. Supp. 2d 753, 765–67 (W.D. Tex. 2013). *See also* Tex. Bus. & Com. Code § 3.301 ("A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.").

This holding is also fatal to the Judahs' view that "strict construction" of the deed of trust excludes Wells Fargo or JPMC as the "Lender."

page of the note to which Godfrey attested, except that it omits the stamped indorsement to Wells Fargo. The second copy, which they label "Version 1," is identical to the others except that it omits both the stamped indorsement and the signature and title of the AHK representative. The Judahs represent that Version 2 was produced by JPMC in response to discovery in the case seeking "[t]he original promissory note pertaining to Plaintiffs' loan." As for Version 1, the Judahs represent that JPMC produced it in 2010, in response to discovery in a prior, different lawsuit between the parties. In the Judahs' view, these conflicting "judicial admissions" regarding the identity of the "true and correct copy" of their note signal "post-hoc shellack[ing]" of the note that evolved over the course of litigation.

The Judahs' arguments fail at multiple levels. The first are procedural. These begin with the absence of summary-judgment evidence or other record support to substantiate the Judahs' representations that the signature pages in fact originated in discovery responses from JPMC in this or any prior cases, let alone that JPMC "judicially admitted" that the pages were true and correct copies of the original note. The discovery responses to which the Judahs refer are not included in the clerk's record, nor did the Judahs present any other competent evidence of the pages' origins or import. Instead, the Judahs simply filed the two signature pages as a "record supplement" accompanied only by a two-page prefatory document consisting of their counsel's unverified representations regarding the pages' origins. Mere assertions and arguments by counsel in pleadings are not competent summary-judgment evidence.[14]

---

[14] *Laidlaw Waste Sys.(Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) ("Generally, pleadings are not competent evidence, even if sworn or verified."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("Pleadings do not constitute summary judgment proof."); *Zayed v. Best Publ'ns LLP*, No. 07-09-0333-CV, 2010 WL 3766617, at *3

But even more critically, nowhere in the Judahs' summary-judgment papers did they ever contend that these signature pages (or any other evidence, for that matter) raise a fact issue as to whether JPMC possesses the original note, as they now attempt to argue on appeal. The pages are never mentioned in the Judahs' summary-judgment motion, nor in any response, nor does their record supplement tie them to any identifiable summary-judgment ground or issue.[15] The Judahs cannot obtain reversal based on this asserted "fact issue" when they did not expressly present it to the district court by written motion, answer, or other response.[16]

Nor would the pages preclude summary judgment even if they were considered in regard to JPMC's initial summary-judgment burden.[17] The mere existence of these copies, without more, does not controvert JPMC's evidence that it possesses the original note, endorsed to Wells Fargo. At most, one might reasonably infer from the pages' existence that the note had been indorsed in blank (i.e., without a specified payee) when the Judahs and AHK initially executed it. "When indorsed in blank, a negotiable instrument becomes payable to the bearer and may be negotiated by transfer of possession alone. . . ."[18] A holder of the note "may convert a blank

---

(Tex. App.—Amarillo Sept. 28, 2010, no pet.) (mem. op.) ("arguments of . . . counsel and . . . pleadings are not competent summary judgment evidence").

[15] A further potential problem for the Judahs is that they did not file this supplement in connection with the cross-motions for summary judgment that gave rise to the judgment on appeal, but in an earlier round of cross-motions that had concluded roughly one year earlier. We will assume without deciding, however, that the supplement was part of the summary-judgment record relevant to this appeal.

[16] Tex. R. Civ. P. 166a(c); *see, e.g.*, *Clear Creek Basin Auth*., 589 S.W.2d at 678–79.

[17] *See, e.g.*, *Clear Creek Basin Auth.*, 589 S.W.2d at 678.

[18] Tex. Bus. & Com. Code § 3.205(b).

8

indorsement that consists only of a signature into a special indorsement by writing, above the signature of the indorser, words identifying the person to whom the instrument is made payable."[19] But even without the stamped indorsement to Wells Fargo, JPMC, who possesses the note, would be the holder and thus entitled to enforce it.

In a final argument, the Judahs vigorously urge us to overrule this Court's memorandum opinion in *Bierwirth v. BAC Home Loans Servicing, L.P.*[20] Their concern is that *Bierwirth* holds or implies (or does so too broadly) that a lender's rights under a deed of trust may be assigned independently from its rights in the underlying debt obligation, which they perceive to be inconsistent with a correct reading of Texas law. Even if we were inclined to revisit *Bierwirth*, we would have no occasion to do so in the posture of this appeal.

## CONCLUSION

We affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   August 25, 2015

---

[19]  *Id.* § 3.205(c).

[20]  2012 WL 3793190.